30 221
39 235
40 407
30 221
72 263

GEORGE A. WESTON, Receiver, vs. THOMAS H. LOYHED.

February 13, 1883.

Constitution—Insolvent Law of 1881—Manner of Proving Claims.—
The insolvent law of 1881 is not unconstitutional because of the manner in which the claims of creditors against the insolvent estate are to be established. The determination of the receiver respecting such claims is not conclusive, and one aggrieved thereby may have a judicial determination in the district court.

Insolvent Law—Involuntary Proceedings—Preferences.—A conveyance by an insolvent debtor, preferring creditors, may be avoided by subsequent insolvency proceedings instituted by creditors against the debtor, under section 2 of the act. In such case the receiver may maintain an action to have such conveyance adjudged void.

Appeal by defendant from an order of the district court for Rice County, *Buckham*, J., presiding, overruling his demurrer to the complaint.

The complaint sets out proceedings in insolvency instituted by certain creditors of the Faribault Wind-Mill Company, under Laws 1881, c. 148, § 2, and the appointment of plaintiff as receiver of such company; that within four months of the filing of the petition in insolvency, the Faribault Wind-Mill Company, being insolvent and indebted to defendant, assigned to him certain accounts, with a view of giving him a preference over its other creditors, the defendant having at the same time reasonable cause to believe that the company was insolvent. Plaintiff prays for judgment avoiding the assignment and preference.

*Perkins & Whipple,* for appellant.

Laws 1881, *c.* 148, is in conflict with that provision of the constitution which declares that no man shall be deprived of his property without due process of law. No hearing is accorded to the debtor or any of his creditors upon the claims against the debtor, but they are established and allowed wholly upon *ex parte* evidence, or in such manner as the judge shall direct. There is no provision for any notice to the debtor or creditor upon the question of the validity of any of the claims. *In re Empire City Bank,* 18 N. Y. 199, 211; *Wynehamer* v. *People,* 13 N. Y. 378, 394; *Rockwell* v. *Nearing,* 35 N. Y. 302; *People* v. *Supervisors,* 70 N. Y. 228; *Baker* v. *Kelley,* 11 Minn. 358, (480;) *State* v. *Becht,* 23 Minn. 411.

*Geo. N. Baxter,* also, for appellant.

There is nothing in section two of the insolvency law of 1881, expressive of any legislative intent to avoid the act or conveyance whereby the creditor obtains his preference. No implication of this kind arises from the provisions of this section that the receiver "shall take possession of all the debtor's property," and that "the assignee shall take possession of all property conveyed in violation of this act," because, a preference not being made void, the property conveyed by it does not belong to the debtor, and was not conveyed in violation of any provision of the act.

A provision declaring void preferences in cases arising under section two would, doubtless, add to the symmetry of the act, and its omission must have been an oversight, the result of hasty legislation. But it is not the theory of our law that the courts may supply, under the name of interpretation or construction, the errors or omissions of the law-making department. *Haworth* v. *Ormerod,* 6 Q. B. 300, 307; *Jones* v. *Smart,* 1 Term Rep. 44, 52.

*Gordon E. Cole, G. W. Batchelder,* and *A. D. Keyes,* for respondent.

DICKINSON, J. The questions arising upon demurrer to the complaint, and presented for our decision in this appeal, are (1) as to the constitutionality of the insolvency law of 1881, (Laws 1881, *c.* 148,) entitled "An act to prevent debtors from giving preference to creditors, and to secure the equal distribution of the property of debtors among their creditors, and for the release of debts against debt-

ors;" (2) whether the act has the effect to avoid preferences made by an insolvent debtor against whom proceedings are subsequently taken, as provided in section 2 of the act, and resulting in the appointment of a receiver; and (3) can such receiver maintain an action to have such preferences adjudged void?

1. The act is claimed to be unconstitutional, because, as is alleged, the claims of those who are to share in the distribution of the insolvent estate are to be established *ex parte* before the receiver, without notice to other creditors or to the debtor, and without opportunity on their part to contest such claims, and because the fund which creditors have a right to have applied in payment of their just demands being impaired or exhausted by the allowance of unjust claims, they are deprived of their property without due process of law. The legal premises upon which this objection rests do not exist, and hence the conclusion cannot be sustained. The proceedings prescribed in section 2 of the act are to be instituted in the district court, and, from the beginning to the end, are in and under the control of that court. That such was the purpose and intent of the law is apparent from provisions contained in several sections of the act, not necessary to be here recited. That court has inherent power, where no limitation is imposed, to so direct the procedure in all causes before it that the legal and constitutional rights of parties may be maintained. *Com'rs of Mille Lacs Co.* v. *Morrison,* 22 Minn. 178, 184-5.

We may assume, for it is not questioned here, that no conclusive determination or adjudication in the allowance of debts by the receiver could be sustained upon constitutional grounds, whether the same was made *ex parte,* or upon notice and hearing; that such a proceeding would not be "due process of law." But we find nothing in the section indicating that it was intended that the action of the receiver in this regard should conclude any party interested in the proceeding. The act does not point out a method of procedure to be pursued by a party who may be unwilling to accept the decision of the receiver, but the administration of this law and the control of the procedure being committed to the court whose jurisdiction is general at law and in equity, it remains for that court, whenever the occasion

shall require and the exercise of its power shall be invoked, to devise or direct such a course of procedure that the object of the law may be accomplished in a legal and valid distribution of the insolvent estate.   The act requires those who would share in such distribution to "come in and prove their respective claims, within such time and in such manner as the court or judge shall direct."   It further provides that the estate shall be "equally distributed among the general creditors thereof, under the direction of the court."   Sections 2, 12.

. 2. Does the act make void preferences made by insolvent debtors whose estates are afterwards brought under the control of the court for distribution, as provided in section 2 of the act?   We are of the opinion that the act expresses the intention of the legislature that such preferences should be invalid as to the general creditors. The object of the law, as expressed in its title, points to such a conclusion.   It is in harmony with the expressed purpose of the act, and conducive to the accomplishment of that purpose, that a disposition of property by an insolvent debtor, in favor of some and to the exclusion of other creditors, should be avoided; and provisions of this kind, with proper limitations as to time and circumstances, are generally found in insolvent and bankrupt laws.   On the other hand, if such preferences by insolvent debtors are allowed, the main purpose of such statutes would be often, and perhaps generally, defeated. But the avoiding of acts of preference is not merely within the general scope and purpose of the statute, and practically necessary for the accomplishment of the main purpose of it.   It is expressly provided in section 4 that conveyances and payments made, and securities given, by an insolvent debtor, or by a debtor in contemplation of insolvency, within four months of making an assignment as provided in section 1, with a view of giving a preference, (with certain qualifications not necessary to be here adverted to,) shall be void; and, by the terms of section 1, preferences secured by the legal proceedings of attachment, garnishment, and execution, (with certain limitations,) are avoided.

For our present purpose it is sufficient to say of section 1, thus referred to, that it authorizes and relates to *voluntary* assignments and

insolvency proceedings by debtors, after the seizure of their property upon legal process. Section 2, under which this case more especially falls, authorizes and relates to *involuntary* insolvency proceedings, upon the petition of creditors. It would seem that the same reasons, and the same practical necessity, which led the legislature to declare void preferences made by insolvent debtors who should thereafter voluntarily make assignment for the benefit of creditors, in accordance with section 1 of this insolvency law, would apply with at least equal force to the case of insolvent debtors whose property, by reason of their making forbidden preferences, or by reason of the violation of some other duty enjoined by the act, has been, upon the petition of creditors, devoted by the law to equal distribution.

These considerations alone might not be deemed sufficient to warrant the conclusion that involuntary insolvency proceedings, under section 2, had the effect to avoid preferences theretofore made. But with the aid which such considerations may give in ascertaining the expressed legislative will, we come to consider more particularly the provisions of section 2. It provides that "when any debtor, being insolvent, shall confess judgment, or do any act or make any conveyance whereby any one of his creditors shall obtain a preference over any other of his creditors, or shall omit to do any act which he might lawfully do to prevent any one of his creditors from obtaining preference over his other creditors, contrary to the intent of this act; or if he shall not, within 10 days after any levy by attachment, execution, or garnishment made against him, make an assignment of all of his property, as provided in section 1 of this act, or, within such time, in good faith, institute proceedings to vacate the attachment and execution or garnishment, or secure a release of such levy, and defend against the said garnishment at the first opportunity, then, or within 60 days thereafter, any two or more of his creditors * * * may make a petition to the district court or a judge thereof; * * * and if it shall appear to the court or judge that the debtor is insolvent, *or* has been giving, or is about to give, a preference to any creditor, * * * the court or judge shall appoint a receiver, who shall take possession of all the debtor's property, * * * *including property attached or levied upon or garnished,* in the manner and subject to the

v.30—15

limitations herein provided, *and of all property conveyed in violation of the provisions of this act,* * * * *and shall* * * * *convert the same to money, and shall marshal and distribute the same among the several creditors.* * * *"*

In passing, we will say that it is apparent that the word "or" which we designate by italics, should be read "and." The condition prescribed as the basis of the proceeding is that the debtor, "being insolvent," has preferred some of his creditors. It was clearly not intended that the estates of *solvent* debtors should be subject to these proceedings merely because they had paid or secured some creditors, and had not paid or secured others. The intent being clear, the disjunctive conjunction should be read as a conjunctive. *State* v. *Myers,* 10 Iowa, 448; *Boyles* v. *McMurphy,* 55 Ill. 236.

The requirement above recited, that the receiver take possession of property which had been attached by legal process, and convert it into money, and make distribution of the same, clearly implies that preferences secured through such legal process, though valid except for this act, are defeated by its operation. The same requirement is made, and the same implication arises, in respect to "all property conveyed in violation of the provisions of this act." Is not an assignment or conveyance of property by an insolvent debtor, "whereby any one of his creditors shall obtain a preference over any other of his creditors," a conveyance "in violation of the provisions of this act," and hence avoided? There can be no doubt. Such a conveyance, while not in terms prohibited, is made cause for instituting these insolvency proceedings against the person making such conveyance, and for taking his property from him, and placing it in the custody of the law, to be distributed among his creditors. It is a principle of common application that when a statute imposes a penalty for the doing of any act, the doing of such act is by implication forbidden and made unlawful. A like principle is applicable here. The imposing, by statute, of these consequences, just referred to, upon the making of conveyances whereby a preference of creditors is effected, is by implication a prohibition, and such conveyance must be deemed as made "in violation of the provisions of this act," and hence avoided by its operation.

It is unnecessary here to advert to such limitations of the general proposition that such preferences are avoided as are found in the statute or deducible therefrom, either as respects the time when the conveyance or other preference may have been made, or the *bona fides* of the transaction. The preference complained of in this case was made less than sixty days prior to the insolvency proceedings. It is, perhaps, not quite clear how far backward the statute should be construed to reach in its invalidating effects, but this case would fall within any limit which the statute can be construed as fixing. The fact appears that the conveyance in this case was made with a view of giving a preference, and the defendant had reasonable cause to believe that the debtor who made the same was insolvent.

3. Can the receiver maintain an action to avoid or set aside such conveyances? Without discussing a point upon which we think there can be no doubt, we hold that the action may be maintained without any express authority.

Order affirmed.