RAILWAY TRANSFER COMPANY, of Minneapolis, *vs.* RAILROAD AND WAREHOUSE COMMISSION.

MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY *vs.* SAME.

September 14, 1888.

Railroad Commission—Orders fixing Rates—Appeal.—Laws 1887, c. 10, creating the railroad and warehouse commission, and defining its duties, construed as not authorizing an appeal to the district court from an order of the commission prescribing rates to be charged by common carriers.

On July 7, 1887, the railroad and warehouse commission made an order reciting: "Whereas all railroad companies owning or op-

erating terminal or switching facilities at or within the city of Minneapolis, with the exception of the Chicago, Mil. & St. Paul Ry. Co., * * * have filed with this commission copies of their several schedules of rates and charges for switching cars on their respective tracks at and within said city; and whereas it appears from said schedules that the rates and charges made by said companies vary from 25 cents per car for empty cars to two dollars per car for loaded cars; and whereas said commission, after due and careful inquiry and consideration, do find that each and every charge in excess of one dollar per car for switching within the limits of the city of Minneapolis is unreasonable and an excessive compensation for the services performed." After which recital the order proceeds as follows:

"Now therefore it is ordered and determined by this commission, pursuant to the authority in them vested by the aforesaid legislative act, that all such schedules be changed by striking therefrom all charges or rates in excess of one dollar per car for the switching or transfer thereof, and inserting, in room of the words or figures stricken out, the word 'one dollar' or the appropriate sign and figures therefor.

"It is the object and purpose of this order to establish one dollar as the maximum charge for the switching or transfer of any car at or within the limits of said city, without regard to distance, or kind of goods or merchandise with which the car so switched or transferred may be loaded."

On August 8, 1887, no judicial proceedings having been begun by the attorney general to enforce the order, the two companies above named severally served on the commission notices of appeal on law and facts to the district court for Hennepin county. The appeals coming on for hearing in that court, before *Young*, J., a motion to dismiss them was denied, and they were heard on the merits, and the order of the commission was in all respects rescinded, on grounds thus stated in the decision of the court: "The statute contemplates that the rates, charges, etc., named in the recommendation shall be as definite and certain as in the schedule required to be filed by the company, for, upon the contingency mentioned, the rates so recom-

mended become binding, and the statute declares 'that after such publication and posting, it shall be unlawful for such common carrier to charge or maintain a *higher* or *lower* rate, fare, charge, or classification than that so fixed and published by said commission.' The establishment of a maximum rate implies that there may be a graduation of rates below such maximum.    The order referred to fixes no rates at all, but establishes a maximum, leaving the common carrier to establish its own rates at any figure below the maximum fixed.    It is apparent that such is not what is contemplated by the statute."    From this order the commission appealed.

*Moses E. Clapp*, Attorney General, and *Morrison, Flannery & Cooke*, for appellant.

*M. D. Grover* and *J. D. Springer*, for respondents.

DICKINSON, J.    The separate appeals of the above-named corporations involve the same question, and were heard together in this court.    The question is presented whether chapter 10, Laws 1887, creating the state railroad and warehouse commission, and prescribing its duties, authorizes an appeal to the district court from an order of that body, prescribing rates to be charged by common carriers.    The court below entertained such an appeal, and reversed the orders appealed from.    From the order of the district court the railroad and warehouse commission appealed to this court.

In *State* v. *Chicago, M. & St. P. Ry. Co.*, 38 Minn. 281, (37 N. W. Rep. 782,) we were required to decide the questions whether, upon the legal construction of this act, it must be regarded as expressing the intention of the legislature that the action of the commission fixing rates in accordance with the statute should be final and conclusive, and whether, so construed, the act was constitutional.    Both of these questions were decided in the affirmative.    That decision goes far to control the determination of the present cases.    Much of what is said in that opinion in support of the decision that the statute contemplates that the order of the commission fixing rates shall be conclusive, and not subject to review by the court upon proceedings taken for the enforcement of the order, is applicable to the precise question now presented, and need not be here repeated.    But as it does not necessarily follow from that decision that the statute is not to be con-

strued as allowing the right to appeal directly from such orders of the commission, we will now consider that particular question.

In entering upon this inquiry, we may adopt as a premise what was decided in the former case, as to the construction of subdivisions *e*, *f*, and *g*, of section 8; that is, that this part of the statute clearly expresses the intention of the legislature that the action of the commission should be final and conclusive. The further inquiry is whether the other parts of the act disclose a purpose to modify the natural import of the language of those subdivisions, so far as to allow an appeal in such cases, and, upon such appeal, an inquiry as to the reasonableness of the rates prescribed by the commission. Such is claimed to be the effect of subdivision *d* of section 15. We will here recite that subdivision, first showing, however, its relation to other parts of the act to which reference will be made. In our former decision we referred to section 8 as being complete in itself as to the subject of the fixing of rates by the commission, and as to the conclusive effect of their action. The next section (9) relates to the creation and organization of the commission, with some general provisions, not here important, relating to its proceedings, and to the duty of the attorney general. Section 10 declares the authority of the commission to inquire into the management of the business of common carriers, and to keep itself informed as to the manner and method in which the same is conducted; and, upon the failure of any such carrier to comply with the laws of the state, or to comply with the notice or order of the commission as to repairs, changes in stations or station-houses, or mode of operating or conducting its business, suits are authorized to be instituted to enforce the order of the commission. Section 11 declares the liability of carriers, in damages, to the party injured from the doing of what is by this act prohibited, or from the omission of what is required to be done. It, in terms, authorizes the party claiming to have been damaged to either prosecute an action for the recovery of damages, or to make complaint before the commission, "as hereinafter provided for." Sections 13 and 14 prescribe what shall be done upon such a complaint being made to the commission. This procedure involves an investigation by the commission, if the carrier shall not, upon notice, have made repara-

tion for the injury, upon which investigation the commission shall make its report, including its findings of fact and recommendation as to what reparation should be made, which findings are to be deemed *prima facie* evidence of the facts found.   If it appear upon investigation that anything has been done or omitted by any carrier in violation of the provisions of this act, or ("or" should probably be "and," *Weston* v. *Loyhed*, 30 Minn. 221, 226; 14 N. W. Rep. 892) that damage has been sustained, the commission is to deliver a copy of its report to the carrier, with notice to desist from such violation, and to make reparation for the injury.   If the carrier shall neglect or refuse to do this, the commission is to certify the case to the attorney general for redress and punishment as provided in section 15.   Section 15, subds. *a*, *b*, and *c*, make it the duty of the attorney general, in such case, to cause suit to be brought in the name of the person injured, for the recovery of damages, in which the report of the commission shall be *prima facie* evidence.   If it be made to appear that the "lawful order or requirement of such commission drawn in question" has been violated, the court may issue a writ of injunction or other process, mandatory or otherwise, to restrain further violation, or to enjoin obedience.   Either party may appeal to the supreme court.

Subdivision *d* is as follows: "In case the attorney general shall not, within a period of ten days after the making of any order by the commission, commence judicial proceedings for the enforcement thereof, any railroad company or other common carrier affected by such order may at any time within the period of thirty days after the service upon him or it of such order, and before commencement of proceedings, appeal therefrom to the district court of any judicial district through or into which his or its route may run, by the service of a written notice of such appeal upon some member or the secretary of such commission.   And upon the taking of such appeal, and the filing of the notice thereof, with the proof of service, in the office of the clerk of such court, there shall be deemed to be pending in such court a civil action of the character and for the purposes mentioned in sections eleven and fifteen of this act.   Upon such appeal, and upon the hearing of any application for the enforcement of any such order

made by the commission or by the attorney general, the court shall have jurisdiction to examine the whole matter in controversy, including matters of fact as well as questions of law, and to affirm, modify, or rescind such order, in whole or in part, as justice may require; and in case of any order being modified, as aforesaid, such modified order shall, for all the purposes contemplated by this act, stand in place of the original order so modified. No appeal as aforesaid shall stay or supersede the order appealed from in so far as such order shall relate to rates of transportation, or to modes of transacting the business of the appellant with the public, unless the court hearing or deciding such case shall so direct."

What is referred to or included in the term "any order," in this subdivision, which is thus made appealable, the language employed leaves unfortunately obscure, but for reasons appearing in the structure and substance of the act, we conclude that it was not intended to apply to orders prescribing rates; and that the clear and unambiguous language of section 8, importing that the action of the commission in that respect should be final and conclusive, was not intended to be modified by this subdivision of section 15. A contrary conclusion would be opposed to the simple and most obvious meaning of those subdivisions of section 8 which relate specifically to this particular subject, and which were undoubtedly framed for the very purpose of authorizing the commission to prescribe rates, and for the purpose of making its action effectual by declaring the obligatory character of the rates thus prescribed. That part of the act suggests no doubt that it was intended to completely express the legislative will in this particular. It declares the authority of the commission to prescribe rates, and its power to compel carriers to adopt the rates which it shall declare to be equal and reasonable. In case of the refusal or neglect of the carrier to adopt the rates recommended by the commission, that body is to publish such rates, "and thereafter it shall be unlawful" for the carrier to charge other rates than those "so fixed and published by said commission;" and specific provision is made "to compel compliance" therewith. No further provision is made in this connection, in respect to that subject; the succeeding provisions of the act relating to other matters. Not only is the pro-

vision here relied upon as conferring the right of appeal from such orders found in another part of the act disassociated from that which treats in such unqualified terms of the power of the commission, and of the obligatory effect of its orders fixing rates, but it is associated with a part of the law relating to other subjects, in respect to which the action of the commission is declared to be merely *prima facie* evidence, and hence not conclusive, and the final determination of which is left to the courts.   Again, as to the character of the orders from which an appeal is allowed, regard should be had to the provision that "upon the taking of such appeal   *   *   *   there shall be deemed to be pending in such court a civil action of the character and for the purposes mentioned in sections 11 and 15 of this act."   The sections thus referred to are those declaring the responsibility of carriers in damages to persons injured by the action or omission of the former, contrary to what is required by the law, and prescribing, as one of the means of redress, an investigation by the commission, with a report of facts and a recommendation and notice to make reparation. It will be noticed that in subdivision *c* of section 15 the action of the commission, expressed in its recommendation and notice, is referred to as the "lawful order or requirement" of the commission.   Doubtless such orders are made appealable by section *d*.   We do not venture to declare the full import and scope of the provision in that subdivision as to the right of appeal.   It is enough for the decision of the question now before us that it has a clear applicability to other matters than orders fixing rates, and that it does not clearly embrace that subject.   To construe it as modifying in a most essential particular the plain and seemingly unmistakable meaning expressed in section 8 would be to allow what is uncertain and of doubtful import to prevail over that which is certain and unambiguous.

We conclude, therefore, that the appeal to the district court was unauthorized, and the order of that court must be reversed.