MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY *vs.* RAILROAD AND WAREHOUSE COMMISSION.

October 1, 1890.

**Appeal—Orders of Railroad Commission.**—No appeal lies to the district court from an order of the railroad and warehouse commission relating to the mode of operating a railway so as to promote the safety and convenience of the public. Objections to such an order can only be made by way of defence to an action brought to enforce it.

On December 1, 1887, the Board of Railroad and Warehouse Commissioners sent to the general managers of the railroad companies doing business in the state a circular letter, as follows:

"It has been observed in travelling upon sleeping-cars used on the railways in the state that whenever the lower berth is occupied the upper berth is almost invariably opened, the bottom piece let down, and as long as the lower berth is occupied is fastened down, although the upper berth is not in use, and there is no reasonable belief that it will be required. Neither the convenience of the porter nor the fact that a traveller needing one bed can occasionally be made to pay for a whole section rather than have his comfort and perhaps his health wantonly interfered with, seems to us a justification of the custom, and we see no other reason for it. The expense of sleeping-car accommodations, when added to the regular fare, is at best burdensome to the traveller of average means, and he should be allowed every advantage which contributes to health or comfort and which does not infringe upon the rights of others.

"In the language of section 10 of chapter 10 of the general laws of 1887, the commission is of the opinion that a change in the mode of conducting business in the particular referred to is reasonable and expedient in order to promote the security, convenience, and accommodation of the public; but no peremptory order will be made within the next ten days, and in the mean time any company upon whom

this notice is served may show good cause, if any it has, why the order should not be final."

On December 28, 1887, without further notice or hearing, the commission issued and served upon the various companies the following order:

"WHEREAS, The custom prevails upon certain railroads upon which sleeping-cars are run and operated within the State of Minnesota of lowering the upper berths of such sleeping-cars and fastening them down, to the discomfort and inconvenience of the occupants of lower berths, notwithstanding the fact that the upper berths are not required for use:

"Now, therefore, it is ordered and determined that, on and after the 1st day of January next, each upper berth in any sleeping-car run or operated upon any railroad within this state, shall be and remain closed whenever the berth beneath the same shall be occupied by a passenger, until such upper berth shall be needed for actual occupancy by some other passenger present and requiring the same: *provided,* that the bed in the upper berth shall be made ready for occupancy, and such berth then elevated and closed until needed for actual occupancy, or it shall be lowered and fastened down at the option of the taker of the lower berth: *and provided also,* that a copy of this order, plainly printed in the English language, shall be kept posted in each end of each and every such car, in a place convenient to be read by persons entering or leaving the car."

On January 18, 1888, the Minneapolis & St. Louis Railway Company appealed from this order to the district court for Hennepin county. At the trial in that court, before *Young,* J., no question was made as to the jurisdiction of the court to hear and determine the appeal. From the evidence introduced by the company it appeared that sleeping-cars were in use upon but one of its lines, viz., that between Minneapolis and Albert Lea, and that the sleeping-cars in use on this line ran between St. Paul and Chicago and St. Paul and St. Louis, in through trains; that on the company's lines operated entirely within this state no sleeping-cars are used; that the sleeping-cars used on the Albert Lea line belonged to the Pullman Sleeping-Car Company, and were furnished by that company under a contract by the terms of which the railway company had no control over the management or internal arrangement of the cars or the receiving of fares for berths from the occupants of the same. There was also

v.44m—22

evidence that it is not practicable to make up the upper berths ready for occupancy and then close them, but that it would be necessary, in case they should be needed for use in the night, to more or less disturb occupants of the lower berths in letting down and arranging the upper berths; and that it is the custom to make up both berths in each section and fasten down the upper berth before either berth is occupied for the night.   At the trial the commission was represented by its chairman and by the attorney general, but offered no evidence to show the necessity of the order appealed from, upon any ground of public policy or otherwise.   The court found the facts in accordance with the evidence as above stated, and held the order was in excess of the power of the commission, and ordered judgment rescinding it.   Judgment was entered, and the commission appealed.

*Moses E. Clapp*, Attorney General, and *Horace Austin*, for appellant.

*Albert E. Clarke* and *John S. Runnells*, for respondent.

MITCHELL, J.   The act (Laws 1887, c. 10) regulating common carriers, and creating a railroad and warehouse commission, is a piece of legislative patchwork composed of provisions borrowed from different and dissimilar sources, without uniformity of plan, and not always consistent with each other.   The construction of the act is therefore a difficult task.   Being purely the creature of statute, the right of appeal from the decision of the commission to the district court, if it exists, must be found in the express provisions of the act.   The only provision assuming to give any such right is that contained in subdivision *d* of section 15.   We do not think that this was intended to give a right of appeal from mere administrative orders made pursuant to the provisions of section 10, pertaining to the manner of maintaining and operating railroads, and affecting merely the security, convenience, and accommodation of the general public.   Our best judgment is that it applies only to those orders or reports made pursuant to the provisions of sections 13 and 14, upon complaint of some person against a carrier, charging it with some violation of duty resulting in damage or injury to him.   The subject-matter of such orders or reports, being mainly the reparation or compensation which the carrier should make to the complainant for the injury done to

him, is judicial in its nature, and might properly be the subject of· investigation by the courts upon appeal, although, inasmuch as under this statute these orders or reports bind no one, and are merely *prima facie* evidence of the matters therein stated, it is difficult to discover the necessity for an appeal from them.

There are two reasons which especially lead us to the conclusion that the right of appeal given by section 15 does not extend to administrative orders made pursuant to the provisions of section 10: *First.* Upon appeal the case is to be tried *de novo*, upon new evidence, and upon questions of fact as well as law. The court has to place itself in the place of the commission, or, as expressed by the learned judge who tried the case, "the hearing before the court upon appeal is *de novo*, and the court is to make the same determination in respect to the subject-matter involved as though the question had originally arisen in the court." But it is not to be presumed that the legislature intended to turn the courts into appellate railroad commissions, which should retry the facts, and pass upon matters of a purely administrative nature, relating to the maintenance and operation of railways, and involving merely questions of policy affecting the security or convenience of the public. Indeed, if the act assumed to confer upon the courts jurisdiction over matters so entirely foreign to the judicial functions, it would be of doubtful validity, to say the least of it. *Secondly.* The act expressly provides that, upon the taking of an appeal, there shall be deemed pending in such court a civil action of the character and for the purposes mentioned in sections 11 and 15. By reference to these sections, it is found that the only civil action mentioned is one brought by or in behalf of some individual, to recover damages or reparation for some injury done him by a carrier, by reason of some violation of duty; the action mentioned in section 11 being one of that kind brought by the party himself, without making any complaint to the commission, and that mentioned in section 15 being one of the same kind brought in his behalf by the attorney general, after an investigation and report by the commission upon complaint. The only method of enforcing administrative orders made under section 10 is by suit instituted for that purpose at the instance of the commission, and to which the

railway company may interpose its defences. What defences to such a suit could be interposed, and how the court should consider the order of the commission, are questions not now before us. All that we decide is that no appeal lies directly from such an order to the district court. The order attempted to be appealed from in this case, if within the authority of the commission at all, is an administrative order made under section 10. No appeal from it to the district court was authorized, and therefore that court never acquired jurisdiction. As this goes to the jurisdiction over the subject-matter, it was not waived because not raised in the court below.

The order of the district court is therefore reversed, and the cause remanded, with directions to the court below to dismiss the appeal of the railway company.