In the Matter of the Application of the NEW YORK EDISON COMPANY and Others, Petitioners, for a Certiorari Order against MILO R. MALTBIE and Others, Defendants.

Supreme Court, Albany County, January 16, 1934.

*Shearman & Sterling* [*William L. Ransom, Neile F. Towner* and *Jacob H. Goetz* of counsel], for the petitioners.

*Charles G. Blakeslee,* for the defendants.

*Arthur J. W. Hilly, Corporation Counsel* [*Harry Hertzoff* of counsel], for the intervenor.

SCHENCK, J.   The petitioners, other than the Westchester Lighting Company, are engaged in the distribution of electricity within

the city of New York, the system companies, so called, having approximately 2,000,000 consumers. The petitioner Westchester Lighting Company distributes electricity to a relatively small number of consumers within the city of New York, and also operates in Westchester county.

This is a motion for a stay and suspension of the operation of the orders of the Public Service Commission, requiring petitioners to put into effect as temporary rates new or amended tariff schedules pending the final determination of a certiorari proceeding brought on by petitioners for a review by the Appellate Division of such orders and determinations.

The Commission made its orders on August 18, 1933, and after a rehearing reaffirmed such orders, except as to one of the petitioners, the Westchester Lighting Company, by orders of November 23, 1933. The orders of August 18, 1933, required the five system companies to reduce their rates for metered service to residential, industrial and commercial consumers by not less than six per cent and required the Westchester Lighting Company to reduce its rates by not less than three per cent. The rehearing on these orders granted the petitioners was limited to the giving of proof with respect to the effects upon petitioners of the agreements and codes entered into by petitioners under the National Industrial Recovery Act and with respect to other definite effects of the said act upon the petitioners since the close of the hearing on August 9, 1933. The Commission also allowed petitioners to produce proof as to certain excise taxes and increased water rates under pending ordinances of the city of New York, which have since been enacted. Subsequent to the rehearing, and on November 23, 1933, the Commission adopted an order confirming its order of August eighteenth as to the petitioners excepting Westchester Lighting Company, and as to that company it amended its order of August 18, 1933, so as to provide for temporary rates, reducing the prices charged by that company to consumers within the corporate limits of the city of New York by not less than six per cent, instead of a reduction of three per cent. The order of November twenty-third follows the findings of a majority of the Commission set forth in a memorandum of the chairman. Two of the commissioners dissented, each writing a dissenting memorandum.

The rates fixed by the Commission were temporary rates under the authority of section 72 of the Public Service Commission Law, and were to continue for a period of one year.

The formula by which the Commission used " the stated value of the common stock outstanding, and the excess over six per cent of income on the stated value of the common stock outstanding "

for the purpose of arriving at an amount available for a temporary reduction, violates every lawful theory of utility rate making. While it is true that the Commission is endeavoring to fix but temporary rates, it cannot in so doing adopt an arbitrary and unlawful method. The fact that these petitioners have earned large dividends in the past does not in any way affect the method of arriving at a reasonable return.

The power of the Commission to make temporary rates is limited by statutory provision and such rates should be made with due regard to a reasonable, average return upon capital actually expended and to the necessity of making reservations out of income for surplus and contingencies. The Supreme Court of the United States has squarely held that the profits of the past cannot be used to sustain confiscatory rates of the future. (*Board of Public Utility Commissioners* v. *N. Y. Telephone Co.*, 271 U. S. 23.)

Public utility rates, whether temporary or permanent, must be found by methods recognized by law and the stated value of capital stock may not be considered as a basis for rate-making purposes. Section 72 of the Public Service Commission Law provides that where it shall be made to appear to the satisfaction of the Commission that the public interest requires a change of the price charged for gas or electricity, the Commission may authorize temporary rates pending the final determination of the rate case, and further provides: " In determining the price to be charged for gas or electricity the Commission may consider all facts which in its judgment have any bearing upon a proper determination of the question although not set forth in the complaint and not within the allegations therein, with due regard among other things, to a. reasonable average return upon capital actually expended and to the necessity of making reservations out of income for surplus and contingencies."

The Commission arrived at a rate base in a sum of not less than $829,975,458 by taking the book fixed capital and deducting therefrom the retirement reserve as shown by the books, thus obtaining the book value of the fixed capital, to which was added an estimated working capital of one-tenth of operating expenses. It determined that six per cent per annum was a reasonable return and that it was possible to make a reduction in rates of an amount in excess thereof. In arriving at the reductions recommended it employed methods which were not sanctioned by law and which were prejudicial to these petitioners.

It is not necessary for this court to pass upon the merits of all the questions raised in this proceeding. It is necessary, however, that the petitioners make a *prima facie* case and fairly show that

in the event the Appellate Division, in its review of the proceedings, reverses the findings of the Commission or annuls its orders, the petitioners will in the meantime suffer irreparable loss and damage. On the making of such *prima facie* case and on the showing of such irreparable loss and damage, this court may, and should, grant a stay pending such review.

The orders of the Commission of August 18, 1933, and the orders of November 23, 1933, were predicated upon a rate base of $829,975,458. The Commission found that six per cent was a reasonable rate of return. On these figures, if proper allowances were made for the amount of additional taxes which the petitioners are required to pay, the reduction in rates ordered by the Commission would yield less than a six per cent return.

The majority of the Commission excludes from operating-expenses the three per cent Federal energy tax, although the learned counsel for the Commission in a well-considered opinion had advised the Commission that it could not lawfully omit this tax from operating expenses and then fail to consider it in fixing rates. The two Commissioners who dissented to the views taken by the majority, both of whom are able lawyers, adopted the opinion of the Commission's counsel and held that the full amount of these Federal taxes should be considered. Accepting the Commission's own figures and allowing the full amount of the Federal taxes which should be allowed, these petitioners will not receive the return under these temporary rates which the Commission indicates is the reasonable return to which they are entitled. If six per cent is a reasonable rate of return, and the Commission so held, then an order of reduction that will deprive these petitioners of such reasonable return is confiscatory.

When the Commission undertook to fix rates based upon the amount of dividends paid upon the stated value of the common stock of these petitioners, it was assuming powers not granted to it by the Legislature. The stated value of capital stock is not a measure of the value of the property used and useful in the public service. In its determination of rates, whether temporary or permanent, the Commission is bound by the provisions of the statute and by the decisions of the courts. The rule laid down in the early case of *Smyth* v. *Ames* (169 U. S. 466, 546) clearly states the basis for determining the reasonableness of rates to be charged by a public utility. There the court said: "The basis of all calculations as to the reasonableness of rates to be charged by a corporation [operating] * * * under legislative sanction must be the fair value of the property being used by it for the convenience of the public. * * * What the company is entitled to ask is a fair

return upon the value of that which it employs for the public convenience. On the other hand, what the public is entitled to demand is that no more be exacted from it for the use of a public [utility] * * * than the services rendered by it are reasonably worth."

This statement of the law has been followed by the courts of this State and by the Federal courts. It may be that temporary rates pursuant to the provisions of section 72 of the Public Service Commission Law could be arrived at by the Commission before the completion of a long drawn out rate case where from the evidence it is clearly indicated that there is sufficient excess of earnings to warrant the proposed reduction without danger of depriving the utility of a reasonable return on its investment, and where there could clearly be no confiscation. Even so, the method of calculation must be a lawful one, and not a method which the courts condemn.

The Chairman of the Commission in his memorandum, which is concurred in by a majority of the Commissioners, states that there is no decision of the courts as to the power of Commissions to fix rates based upon the amount of dividends paid upon the stated value of the common stock, and that the Commission should follow his recommendations and leave the legal question for the courts to decide. This question has been passed upon by the Supreme Court of the United States. (*Galveston Electric Co.* v. *Galveston,* 258 U. S. 388, 395; *McCardle* v. *Indianapolis Water Company,* 272 id. 400; *Board of Public Utility Commissioners* v. *N. Y. Telephone Co.,* 271 id. 23; *Los Angeles Gas & Electric Corporation* v. *Railroad Commission,* 289 id. 287.)

The formula adopted by the Commission for the purpose of arriving at a determination of the amount of reduction of rates is sanctioned neither by statute nor judicial decision, and the Commission cannot justify its determination to fix rates based upon the amount of dividends paid upon the stated value of the capital stock by holding that " where equity requires a certain determination and the law is not clearly to the contrary, this Commission should adhere to the equitable decision until the courts have clearly ruled that such equitable determination is illegal." The Public Service Commission has no equity jurisdiction and no powers beyond those conferred upon it by statute. (*People ex rel. N. Y. Steam Co.* v. *Straus,* 186 App. Div. 787; *People ex rel. Municipal Gas Co.* v. *Public Service Commission,* 224 N. Y. 156.)

Admittedly there is a sharp difference of opinion as to the rate of return which would be earned by the petitioners after the proposed rate reductions. Taking the Commission's own rate base,

it is the contention of the petitioners that the rate of return would be but four and eighty-five one-hundredths per cent, while the affidavit of the Commission's accountant on the same rate base shows a return of five and forty-four one-hundredths per cent.

The affidavit of the Commission's accountant indicates that the proposed rates are inadequate by $4,622,000 to allow a return of six per cent, while the petitioners contend that on the same rate base the proposed rates are inadequate by at least $9,515,000. Rejecting petitioners' claim to present value and accepting the Commission's rate base, it becomes apparent that the proposed rates will yield $4,622,000 less than that which the Commission has determined would be a reasonable return. On the other hand, taking the rate base adopted by the Commission and allowing the petitioners' claim for additional operating expense, the proposed rates will fall short of producing such return by $9,515,000. It is not necessary for this court to determine in this proceeding whether or not a six per cent return is a reasonable rate of return. The majority of the Commissioners adopted six per cent as a reasonable rate of return and the minority accepted this rate as being fair under present conditions. Commissioner Brewster, in his dissenting memorandum, holds that while it is not as high as the rate of return which the companies have received in times of prosperity when all industry prospered, yet, " it is sufficiently high to maintain the credit of the companies and permit the companies to obtain new capital for necessary extensions." Commissioner Van Namee accepts such rate of return as just and reasonable under existing circumstances, " for a temporary period of not more than one year," but points out that since August the enactments of Congress and the increases in taxes and water rents have made impossible any reduction, unless the Commission fixes rates which will allow a return of less than six per cent, and says, " To do this, I believe exceeds the power of the Commission."

It is undoubtedly true that these petitioners have accumulated a very large surplus, but the law does not require utilities to give up for the benefit of future consumers any part of their accumulations from past operations.

" The just compensation safeguarded to the utility by the Fourteenth Amendment is a reasonable return on the value of the property used at the time that it is being used for the public service." (Board of Public Utility Commissioners v. N. Y. Telephone Co., supra.)

This court should not grant an order staying or suspending an order of the Commission fixing a rate, except upon proof that great and irreparable damage would result therefrom. (Public Service Commission Law, § 23.) Mr. Chief Justice HUGHES, in

the case of *Public Service Commission of Wisconsin* v. *Wisconsin Telephone Co.* (289 U. S. 67), writing for the court, points out the importance of careful and deliberate action upon such applications. " While an application for an interlocutory injunction does not involve a final determination of the merits, it does involve the exercise of a sound judicial discretion. That discretion can be exercised only upon a determination, in the light of the issues and of the facts presented, whether the complainant has made, or has failed to make, such a showing of the gravity of his complaint as to warrant interlocutory relief. Thus, if the issue is confiscation, the complainant must make a factual showing of the probable confiscatory effect of the statute or order with such clarity and persuasiveness as to demonstrate the propriety in the interest of justice, and in order to prevent irreparable injury, of restraining the State's action until hearing upon the merits can be had."

These petitioners, however, have made a *prima facie* case, and have demonstrated that " in the interest of justice, and in order to prevent irreparable injury," a stay should be granted until hearing upon the merits can be had. They have shown that the proposed rates will deprive them of the reasonable return to which they are entitled, and if in the review of this proceeding on the merits, the Appellate Division finally· reverses the orders of the Commission or suspends its determination, they will suffer irreparable injury. Whether the amount be $4,622,000, or $9,515,000 per annum, or some intermediate amount, the injury sustained will be irreparable for the reason that these petitioners will be unable to recover it back from their 2,000,000 consumers.

The petitioners set forth in their petition various other claimed errors of the Commission which they seek to have reviewed by the Appellate Division, including the alleged refusal of the Commission to accept relevant evidence of reproduction cost as a measure of the present value of property used and useful in the public service; the inadequacy of a rate of return of six per cent; the inadequacy of the allowance for working capital and going value; and the alleged refusal to allow for additional operating expenses made necessary by agreements entered into under the National Industrial Recovery Act.

It is not necessary for this court to pass upon the merits of these contentions to find that petitioners' application for a stay and a suspension of the Commission's orders pending the determination of the certiorari proceeding should be granted.

Pending a review by the Appellate Division and until the final determination thereof, the interest of petitioners' consumers should be protected as far as possible. It may well be that all of these

consumers will not be given full protection by bonds for restitution by petitioners in the event that the Appellate Division upholds the orders of the Commission. However, a requirement that the company give an adequate bond or undertaking conditioned for the repayment to its consumers of the difference between the amounts collected under the present schedule and the amount that it would be entitled to collect under the rates required by the orders of the Commission, with interest, is probably the fairest method of protection and the one most frequently used. (*Matter of Peoples Gas & Electric Co.*, 122 Misc. 285; *Matter of Iroquois Natural Gas Company*, 176 N. Y. Supp. 474; *Consolidated Gas Co.* v. *Newton*, 267 Fed. 23.)

Order may be entered staying and suspending, pending the final determination of this proceeding, the orders of the Public Service Commission dated August 18, 1933, and the orders dated November 23, 1933, and any and all execution or enforcement of such orders, on condition that these petitioners shall file a bond, to be approved by this court, the condition of said bond being that if the Appellate Division upon final determination of the certiorari proceeding affirms the determinations and orders of the Commission, petitioners shall repay to their consumers from the respective sums received from them the difference between the rates and charges required by said orders and the rates required by the present schedules of these petitioners, together with interest.