STATE AND PORT AUTHORITY OF SAINT PAUL v. NORTH-
ERN PACIFIC RAILWAY COMPANY AND OTHERS.[1]

March 29, 1946.

No. 34,093.

1Reported in 22 N. W. (2d) 569.

*J. A. A. Burnquist,* Attorney General, and *George T. Simpson,* Special Counsel, for the State.

*Bruce J. Broady,* Corporation Counsel, and *Ira Karon,* Assistant Corporation Counsel, for appellant Port Authority of Saint Paul.

*Conrad Olson, P. F. Gault, Guy A. Gladson, L. E. Torinus, A. H. Lossow, A. O. Bjorklund, Eldon M. Martin, Richard Musenbrock, Philip Stringer, C. O. Newcomb,* and *A. C. Erdall,* for respondents.

THOMAS GALLAGHER, JUSTICE.

These proceedings were instituted by the filing of two separate verified complaints with the railroad and warehouse commission, one by the Port Authority of Saint Paul (a municipal commission created under the harbor act, L. 1929, c. 61, as amended by L. 1931, c. 132, Minn. St. 1941, § 458.09 [Mason St. 1940 Supp. § 1372-7½]), and one by the state through the attorney general. The complaints both alleged in substance that certain switching charges for carload traffic switched from the property of said Port Authority to

industries in the St. Paul Switching District were unduly preferential, unreasonable, discriminatory, and unlawful.

The two proceedings were joined and tried before the commission as one action. After the hearing, on May 1, 1945, the commission made its order determining that certain of. the switching rates complained of were excessive, unequal, and unreasonable, and unduly preferred certain shippers; all in violation of public convenience and necessity. Said order did not make "a tariff of rates, fares, charges, and classifications," as provided by Minn. St. 1941, § 216.19 (Mason St. 1927, § 4644), to be substituted for the tariff complained of, but fixed the maximum charges defendants might thereafter lawfully collect for switching services in said district. The order provided:

"That all carriers serving the St. Paul Switching District, as herein defined, shall by appropriate and lawful tariff publication, establish on not less than five days' notice, to become effective on or before June 1, 1945, the charges for the switching of carload traffic from points and places on the tracks of the Port Authority of the City of St. Paul to connections with connecting lines and industries on their respective lines, the charges herein found reasonable;"

Service of the order upon defendants was made on May 2, 1945. On May 17, 1945, they appealed therefrom to the district court of Ramsey county, as provided by §§ 216.24 and 216.25 (§§ 4650, 4651). On May 18, 1945, they moved said court for an order staying the effect of the commission's order pending the appeal. On May 23, 1945, the court stayed the commission's order until final determination of the appeal, and further ordered that, commencing June 1, 1945, defendants keep a detailed account of all switching charges in the district, showing the date of each switching movement, the names and addresses of each consignee of freight handled therein, and the amounts collected from such consignees in excess of the maximum charges fixed by the commission's order. The court's order further provided that each defendant file with the clerk of said court an undertaking with sureties in the sum of $1,000, con-

ditioned that each of them would refund to any persons entitled thereto all sums collected in excess of the amounts finally authorized in these proceedings.

On May 28, 1945, this appeal was taken from the court's order staying enforcement of the original order of the commission.

On appeal, complainants contend (1) that the district court, by virtue of § 216.19 (§ 4644), was without power, either in its discretion or otherwise, to stay the enforcement of the commission's order pending the appeal; and (2) that, if the district court had discretionary power to stay enforcement of said order, its action in doing so was arbitrary and in effect an abuse of discretion.

■ We are of the opinion that the district court, by virtue of the applicable statutes, had discretionary power to stay enforcement of the order of the railroad and warehouse commission pending appeal. Section 216.19 (§ 4644) provides:

"Upon the verified complaint of any person or of any corporation, private or municipal, that any tariff of rates, fares, or charges, * * * is unequal or unreasonable, the commission shall proceed to investigate the matter * * *. If upon the hearing such tariff of rates, fares, or charges, * * * is found to be unequal or unreasonable, the commission shall make an order stating wherein the same are so unequal or unreasonable and make a tariff of rates, fares, charges, and classification which shall be substituted for the tariff so complained of. The tariff so made by the commission shall be deemed prima facie reasonable in all courts and shall be in full force during the pendency of any appeal or other proceedings to review the action of the commission in establishing the same."

It is complainants' contention that the commission's order in effect constituted a tariff of rates, fares, charges, and classifications, and, hence, under § 216.19 (§ 4644), that the district court was not authorized to stay enforcement thereof during the pendency of the appeal. Examination of § 216.19 (§ 4644) indicates that the restrictive provisions thereof relate to tariffs of rates, fares, charges, and classifications made or established by the commission. In the

instant case, we do not find that a tariff of rates, fares, charges, or classification was made by the commission. Its order was limited to a statement of the maximum charges over which defendants might not go in establishing their tariffs in the district involved. Defendants, and not the commission, by the terms of the order were to make and establish the tariffs required, presumably in compliance with § 218.35 (§ 4832), which provides:

"Every railroad company shall keep at every station or depot of its road, convenient for and open to public inspection, schedules printed in large type, showing all classifications, rates, fares, and charges for transportation of freight and passengers in force at the time upon its road. Such schedule shall plainly state the places between which persons and property will be carried, shall show the classification of freight, a distance tariff, a table of distances between stations, and state, separately, the terminal charges, and any rules or regulations in any way affecting the aggregate of such rates, fares, and charges."

In the commission's order there was no reference to classification of freight, tables of distances, schedules of rates, terminal charges, or to the rules and regulations contemplated by § 218.35 (§ 4832), nor could its order in the form issued "be substituted for the tariff so complained of" as specified in § 216.19 (§ 4644). It must follow, therefore, that the court order here under attack did not, in violation of § 216.19 (§ 4644), stay enforcement of a tariff of rates, fares, charges, and classification made by the commission and "substituted for the tariff so complained of."

(It may be of interest to note here that the United States Supreme Court, in Pacific T. & T. Co. v. Kuykendall, 265 U. S. 196, 44 S. Ct. 553, 68 L. ed. 975; Porter v. Investors Syndicate, 286 U. S. 461, 52 S. Ct. 617, 76 L. ed. 1226; and Mountain States Power Co. v. Public Service Comm. 299 U. S. 167, 57 S. Ct. 168, 81 L. ed. 99, directly or by implication casts doubt upon the constitutionality of restrictive provisions such as are contained in § 216.19 [§ 4644],

suggesting that in effect such provisions deny due process to litigants.)

■ In addition, subsequent sections of our statutes provide ample authority to support the court's action in suspending enforcement of the commission's order. Thus, § 216.25 (§ 4651) provides:

"*  *  * If the [district] court shall determine [on appeal] that the order appealed from is lawful and reasonable, it shall be affirmed and the order enforced as provided by law. If it shall be determined that the order is unlawful or unreasonable, it shall be vacated and set aside. *Such appeal shall not stay or supersede the order appealed from unless the court upon examination of the order and the return made on the appeal, and after giving the respondent notice and opportunity to be heard, shall so direct. If such appeal is not taken such order shall become final, and it shall thereupon be the duty of the carriers affected to adopt and publish the rates or classifications therein prescribed.*" (Italics supplied.)

It is clear therefrom that the legislature intended to extend to the courts power to stay enforcement of the commission's orders, including orders relating to rates, under the procedure outlined therein. Complainants' contention that § 216.25 (§ 4651) has no application to rate orders is not sustained by the language of said statute. That the section is applicable to orders relating to rates is apparent from the words "If such appeal is not taken  *  *  * it shall thereupon be the duty of the carriers affected to adopt and publish the *rates or classifications therein prescribed.*" (Italics supplied.) The language quoted is clear and conveys a definite meaning. The conclusion cannot be escaped that the court, by virtue thereof, was authorized to stay enforcement of the rate order made here by the commission pending appeal. Under such circumstances, there is no occasion to resort to rules of statutory interpretation or construction with reference to said provision, and it would be improper to give the language used another and different meaning than it plainly demands. 50 Am. Jur., Statutes, § 225.

Looking further at the statutes governing appellate procedure here, we find that § 217.30 (§ 4659) specifically provides:

"* * * no such appeal shall stay the operation of such order * * * *unless the district or supreme court shall so direct* and unless the carrier appealing from a judgment or order fixing rates for transportation of persons or property shall give bond in a sum and with sureties approved by a judge of the court ordering the stay, conditioned that the appellant will refund to the person entitled thereto *any amount received for such transportation above the amount finally fixed by the court."* (Italics supplied.)

It is apparent that here again the legislature contemplated that it would be within the court's usual discretionary powers to stay enforcement of rate orders pending appeal. We conclude, upon consideration of all the foregoing statutes, that the court was not prohibited by virtue thereof from suspending by stay the order of the commission here involved pending final determination of the appeal.

■ We must still determine whether the court *abused its discretion* in suspending the commission's order. Section 216.25 (§ 4651) provides that the order appealed from shall not be stayed *"unless the court upon examination of the order and the return made on the appeal, and after giving the respondent notice and opportunity to be heard, shall so direct."* (Italics supplied.) It is not disputed that in the instant case the court had before it the order of the commission; that it duly examined it and the return made on the appeal; and that an opportunity for complainants to be heard thereon was presented. Accordingly, when the court made its order staying enforcement of the commission's order, *it had strictly complied with the prerequisites set forth in said §216.25 (§ 4651).*

In this respect the instant case is distinguished from Public Service Comm. v. Wisconsin Telephone Co. 289 U. S. 67, 53 S. Ct. 514, 77 L. ed. 1036, where the United States Supreme Court vacated a decree of interlocutory injunction made by the federal district court because the latter had failed to comply with that court's well-established rules of construction governing 28 USCA, §§ 381, 382,

383 (subsequently incorporated in Equity Rule 70½ as amended in 1935 [28 USCA, § 723, Appendix], and Rule 52, Federal Rules of Civil Procedure, promulgated in 1937 [28 USCA, following § 723c]), requiring the order for injunction to set forth the reasons therefor, both as to facts and law. Here, there are no similar statutes, judicial precedents, or court rules involved, and the applicable statute (§ 216.25 [§ 4651]) was carefully followed by the trial court. Likewise, the decision in Matter of Long Island Lighting Co. v. Maltbie, 160 Misc. 165, 289 N. Y. S. 1092, was based upon the specific requirement of a New York statute. There, subd. 2 of § 23 of the Public Service Law of New York (Cons. L. of N. Y. c. 48) specifically required, as a prerequisite to the granting of a stay in rate cases, evidence and a finding that great and irreparable damage would result to the appellant if a stay were denied. There, a stay was denied because of appellant's failure to comply with this statutory provision. Under the Minnesota statutes, no such prerequisites are specified.

Furthermore, here, in addition to the order and return submitted for examination, there was presented the affidavit of R. B. Leng, assistant general freight agent of the Chicago, St. Paul, Minneapolis & Omaha Railway Company, one of the defendants, to the effect that he was familiar with defendants' existing tariffs; that he was present at the hearings on defendants' motion; and that if, pending the appeal, defendants were required to place in effect the reduced charges provided for by the commission's order and such order should be found invalid on appeal defendants would be forced to seek recovery of the additional freight charges due from numerous shippers, many of doubtful financial responsibility, or from non-residents of Minnesota, indicating that a multiplicity of suits would follow reversal of the commission's order if the motion for stay were denied.

In 2 Dunnell, Dig., Discretion, p. 650, judicial discretion is defined as follows:

"Judicial discretion is that part of the judicial power which depends, not upon the application of rules of law or the determina-

tion of questions of strict right, but upon personal judgment to be exercised in view of the circumstances of each case. It is a fundamental rule of appellate procedure that the determination of a trial court of a matter resting in its discretion will not be reversed on appeal except for a clear abuse of discretion. If a trial court exercises its discretionary power wilfully, arbitrarily, or capriciously, or contrary to well established legal usage, its action may be reversed on appeal, for the power is not absolute but judicial."

As stated in LaPlante v. Knutson, 174 Minn. 344, 346, 219 N. W. 184:

"* * * the subject matter of the order appealed from was within the field of judicial discretion, wherein the judge is left free from arbitrary rules so that he may be unhampered in fitting his action to the merits of each case as it arises."

The discretionary power of the courts with reference to supersedeas or stay is defined in 4 C. J. S., Appeal and Error, § 635, as follows:

"* * * the statutes sometimes give an absolute right to a supersedeas or stay on appeal or writ of error on compliance with certain conditions, and do not leave the granting or refusal of the same to the discretion of the court. When, however, the matter is not regulated by statute, or when the statute does not give an absolute right, but leaves the matter to the court or judge, a motion for a supersedeas or stay is addressed to the discretion of the court or judge * * *."

And in *Id.* § 636, as follows:

"* * * As a rule a supersedeas or stay should be granted, if the court has the power to grant it, whenever it appears that without it the objects of the appeal or writ of error may be defeated, or that it is reasonably necessary to protect appellant or plaintiff in error from irreparable or serious injury in case of a reversal, and it does not appear that appellee or defendant in error will sustain irreparable or disproportionate injury in case of affirmance. *It should be granted where * * * the loss or damage occasioned by the stay can*

*be met by a money award,* where important questions of law are raised, which, if decided in favor of appellant or plaintiff in error, will require a reversal, *to avoid a multiplicity of suits,* or to protect the appellate court's jurisdiction." (Italics supplied.)

From the foregoing quotations, which express the general rules applicable herein, it is apparent that the power to stay proceedings pending appeal is inherent in the courts and exists notwithstanding the statutes may be silent on the matter. Here, the statutory limitations upon the court's power were not disregarded, and it is clear that there was no abuse of its discretionary power. If the rate-fixing order were to be reversed, in the absence of the stay ordered, defendants would be compelled to engage in a multiplicity of suits in this and other states to enforce collection of charges due. While it is true that affirmance of the order would entitle the shippers to refunds for overpayments, the court took cognizance of this in requiring the filing of the bonds above described. In its discretion, it determined that, under all the facts and circumstances, less litigation would follow if the commission's order were stayed pending the appeal. In arriving at this conclusion, we cannot say that it exercised its discretion in such a wilful, arbitrary, or capricious manner as to compel interference by this court.

▇ Complainants refer to § 216.19 (§ 4644), which specifically provides:

"* * * The tariff so made by the commission shall be deemed *prima facie reasonable* in all courts and shall be in full force during the pendency of any appeal or other proceedings to review the action of the commission in establishing the same." (Italics supplied.)

They contend that since, at the hearing on the motion, no evidence was presented to establish that the maximum tariff ordered by the commission was *unreasonable,* the court was bound to determine that such rate was *prima facie reasonable,* and hence that its order staying enforcement thereof constituted an abuse of discretion. We have previously held herein that the foregoing section, in the light

of the other statutory provisions applicable, does not operate to forbid the court, upon a proper showing, from staying the enforcement of a rate-fixing order of the commission pending appeal therefrom. We do not feel that it should be construed to mean that upon a motion to stay enforcement of a rate-fixing order it is incumbent upon the carriers affected to present evidence at that time establishing that the order appealed from is unreasonable or confiscatory, and that, in the absence thereof, notwithstanding the court's compliance with the statutory prerequisites for the making of such an order, and notwithstanding the presence of other factors ordinarily justifying a stay, the court is without power to grant the motion. Ordinarily, the granting or denying of a temporary injunction involves no determination of the merits, and it is not necessary that at the time of the application therefor the applicant submit the evidence intended to be presented at the final hearing. See, 28 Am. Jur., Injunctions, § 268.

Our conclusion here is supported by § 216.25 (§ 4651), which again specifies that an order of the railroad and warehouse commission shall be deemed reasonable, and further provides that, upon appeal therefrom, the burden is upon the appellant to establish otherwise. This can only mean that at the hearing on appeal, rather than on the motion to stay, the evidence attacking the order is to be presented and considered. This was the procedure followed in State v. G. N. Ry. Co. 130 Minn. 57, 153 N. W. 247, Ann. Cas. 1917B, 1201; Abrahamson v. Canadian Northern Ry. Co. 177 Minn. 136, 225 N. W. 94; and M. & St. P. S. R. Co. v. Villages of Excelsior and Tonka Bay, 186 Minn. 573, 244 N. W. 61.

Public Service Comm. v. Wisconsin Telephone Co. 289 U. S. 67, 53 S. Ct. 514, 77 L. ed. 1036, *supra,* and Matter of Long Island Lighting Co. v. Maltbie, 160 Misc. 165, 289 N. Y. S. 1092, *supra,* urged as supporting a rule that upon motion for stay of a rate order the utility affected must present clear and convincing proof that the rate prescribed will result in confiscation, as previously indicated, were dependent upon interpretations of statutory provisions distinct from the Minnesota statutes involved and are inap-

plicable as authorities here. We conclude that if, after compliance with § 216.25 (§ 4651), the court had reasonable grounds for determining that a stay was necessary to avoid a multiplicity of suits, or ordered a stay for other reasons commonly the basis of such an order, its discretion was not abused, even though defendants did not at that time present additional evidence on the principal issue.

■ Our construction of the foregoing statutory provisions is not in conflict with the well-established rule (incorporated in § 216.25 [§ 4651]) that rates fixed by authorized rate-making bodies are presumed to be reasonable and that the burden of establishing otherwise rests upon the carriers affected. American Toll Bridge Co. v. Railroad Comm. 307 U. S. 486, 59 S. Ct. 948, 83 L. ed. 1414. The rule thus expressed has no reference to the discretionary power of the court to stay such an order until the carrier affected is afforded an opportunity of sustaining the burden thus placed upon it. It relates to the presumption and procedure applicable at the final hearing. It may be noted in the case cited that the rate order there under attack was thus stayed pending the appeal therefrom. American Toll Bridge Co. v. Railroad Comm. 12 Cal. (2d) 184, 83 P. (2d) 1. Cases such as State ex rel. Ohio Bell Tel. Co. v. Common Pleas Court, 128 Ohio St. 553, 192 N. E. 787, and City of Cleveland v. Public Utilities Comm. 126 Ohio St. 91, 183 N. E. 924, involved statutes distinct from the Minnesota statutes above referred to and have no bearing on the issues here to be determined.

6. The rule expressed in 43 Am. Jur., Public Utilities and Services, § 186, that a court will not enjoin the collection of rates established under legislative sanction unless they are palpably unreasonable or confiscatory, does not relate to orders staying enforcement thereof pending appeal, but rather expresses the rule applicable after full presentation of the evidence at the final hearing on such appeal. As a general rule, the courts follow the practice here adopted of staying enforcement of challenged rates pending appeal from the rate-fixing order. See, Arkadelphia Milling Co. v. St. Louis S. W. Ry. Co. 249 U. S. 134, 39 S. Ct. 237, 63 L. ed. 517; St. Louis I. M. & S. Ry. Co. v. McKnight, 244 U. S. 368, 37 S. Ct.

611, 61 L. ed. 1200; Newton v. Consolidated Gas Co. 258 U. S. 165, 42 S. Ct. 264, 66 L. ed. 538; Annotation, 131 A. L. R. 878; New York Edison Co. v. Maltbie, 150 Misc. 200, 270 N. Y. S. 409; and Niagara Falls Power Co. v. Water Power and Control Comm. 267 N. Y. 265, 196 N. E. 51.

■ We do not attempt to determine now whether the maximum rates prescribed by the commission's order are unreasonable or confiscatory. Neither do we attempt to characterize the rates as established prior to the order. It may be that many of such prior rates were excessive and unreasonable. The function of the trial court will be to determine whether the commission's order is reasonable and valid, or otherwise, after the parties have had a fair opportunity of presenting such additional evidence as may be material to this issue. See, State v. G. N. Ry. Co. 130 Minn. 57, 153 N. W. 247, Ann. Cas. 1917B, 1201, *supra*. A discussion of existing rates, or of the maximum rate fixed by the commission based upon the present record, would serve no purpose now.

The order appealed from is affirmed.

PETERSON, JUSTICE (dissenting).

■ I think that it makes no difference whether the rates fixed by the commission be called a "tariff" or just plain "rates." Section 216.19 (§ 4644), governing rate proceedings instituted upon complaint, provides that the "tariff" of rates fixed shall be in force during the pendency of an appeal. Section 216.20 (§ 4645) adopts this provision in cases started by the attorney general. Section 216.21 (§ 4646), governing proceedings initiated by the commission itself, provides that the "rates" established shall be in force during the pendency of an appeal. It is deferentially submitted that there is no difference in substance between the "tariff" of rates, referred to in the two first-mentioned statutes, and the "rates" established, referred to in the last-mentioned statute, and that the legislature intended to draw no distinction between a tariff of rates and rates established. Plainly, a tariff of rates and rates established mean one and the same thing. No reason can be suggested for any other conclusion. Does the court mean that under §§ 216.19 and 216.20

(§§ 4644 and 4645) no rates are legally established unless the commission shall prepare some sort of a schedule or tariff, as it is called, and that under § 216.21 (§ 4646) rates are legally established by the order itself without any schedule or tariff? If so, the result is a plain absurdity. After all, the important thing is that the legislature intended that rates established in rate proceedings, and not the tariffs and schedules in which they might be included, should be in force pending an appeal from an order of the commission to the district court. A tariff or schedule as such has no merit.

I think, however, that paragraph 7 of the commission's order[2] constitutes a tariff, because it fixes a schedule of rates and classifications. After all, a tariff is simply a schedule of charges. 41 Wd. & Phr. (Perm. ed.) pp. 108-109. The word "tariff" is used in the statutes with that meaning. The carriers' schedules of charges are

[2]"7. That for the future the just and reasonable and nonprejudicial switching charges on carload intrastate traffic will be: (a) between points and places on the tracks of the Port Authority of the City of St. Paul and Chicago Great Western Railway Company or Chicago, Milwaukee, St. Paul and Pacific Railroad Company connections with connecting lines will not exceed $4.40 per car; (b) between points and places on the tracks of the Port Authority and industries on the tracks of the so-called South St. Paul Terminal of the Chicago Great Western Railway will not exceed $4.40 per car; (c) between points and places on the tracks of the Port Authority and industries on the tracks of the Chicago Great Western Railway Company will not exceed $7.87 ($4.40 plus $3.47) per car; (d) between points and places on the tracks of the Port Authority and industries on the tracks of the Minneapolis and St. Louis Railway Company or the Minneapolis, St. Paul and Sault Ste. Marie Railroad Company will not exceed $11.35 ($4.40 plus $3.47 plus $3.47) per car; (e) between points and places on the tracks of the Port Authority and industries on the tracks of the Chicago, Burlington and Quincy Railroad Company; Chicago, Milwaukee, St. Paul and Pacific Railroad Company; Chicago, St. Paul, Minneapolis and Omaha Railway Company; Chicago, Rock Island and Pacific Railway Company; Great Northern Railway Company and Northern Pacific Railway Company will not exceed $7.87 ($4.40 plus $3.47) per car; (f) that on traffic between points and places on the tracks of the Port Authority and industries on the tracks of the Minnesota Transfer Railway will not exceed $11.33 ($4.40 plus $6.93) per car."

referred to as "tariffs" in §§ 218.07, 218.08 (§§ 4771, 4772) and as "schedules" in §§ 218.09 and 218.35-218.38 (§§ 4773 and 4832-4835).

If, as the majority says, the commission did not by its order make a tariff of rates, charges, and classifications to be substituted for those in force at the time the order was made, we ought to reverse with directions to vacate the stay order, for the obvious reason that, since the stay was granted upon the supposition that the rate order provided for a tariff of rates that were confiscatory and that the stay was necessary to protect the railroads against irreparable loss resulting from enforcement of such confiscatory rates, there was no basis for a stay, and hence none should have been granted.

■ In my opinion, the district court was without authority to grant a stay of enforcement of the rate order on the appeal from the commission. On the one hand, we have three statutes which specifically provide that rates established by the commission shall be in force pending any appeal from the commission to the district court,[3] and, on the other hand, we have a statute which provides generally that no appeal shall stay or supersede the order appealed from unless the court upon hearing and notice shall so direct.[4]

---

[3] Section 216.19 (§ 4644) provides: "The *tariff* so made by the commission shall be deemed prima facie reasonable in all courts and shall be in full force during the pendency of any appeal or other proceedings to review the action of the commission in establishing the same." (Italics supplied.)

Section 216.20 (§ 4645) provides that the attorney general may institute rate proceedings and that "The commission shall investigate such complaint in the manner provided for the investigation of complaints made under the provisions of section 1969 of the Revised Laws of 1905 [§ 216.19 (§ 4644)]." By providing that the investigation of rates shall be the same as under § 216.19 (§ 4644), § 216.20 (§ 4645) adopts the clause quoted above from that section and thereby in effect provides that the *tariff* of rates adopted thereunder shall be in full force during the pendency of any appeal.

Section 216.21 (§ 4646) provides: "The *rates* established under proceedings instituted under this section shall be in force during the pendency of any appeal or other proceeding to review the action of the commission." (Italics supplied.)

[4] Section 216.25 (§ 4651) provides: "Such appeal shall not stay or supersede the order appealed from unless the court, upon an examination of said

Thus, the question arises whether what the legislature has specifically three times said cannot be done is authorized by a general provision otherwise broad enough to authorize such action. Unless there is some explanation for the apparent statutory conflict, it is indeed an unparalleled example of inexcusable legislative bungling. The conflict cannot be solved by merely holding that, because the general provision provides for a stay, it shall prevail over the specific provisions that there shall be none. This is contrary to the settled rule that specific provisions control over general ones (see, Railway Transfer Co. v. Railroad and Warehouse Comm. 39 Minn. 231, 39 N. W. 150; Aslakson v. State Dept. of Highways, 217 Minn. 524, 15 N. W. [2d] 22) and avoids the problem of construction which the conflict raises. The conflict can be resolved only by resort to the process of statutory construction.

The history of the statutes involved makes it clear that the legislative intention was that the district court should have no power to grant a stay of a rate order on appeal from the commission. At the outset, we should bear in mind that L. 1887, c. 10, the statute creating the commission and defining its duties and powers, is as Mr. Justice Mitchell said in M. & St. L. Ry. Co. v. Railroad and Warehouse Comm. 44 Minn. 336, 338, 46 N. W. 559, "a piece of legislative patchwork." The same learned judge made an outstanding contribution to the law of statutory construction in construing the same statute in State ex rel. Railroad and Warehouse Comm. v. C. M. & St. P. Ry. Co. 38 Minn. 281, 37 N. W. 782.

Chapter 10 drew a distinction between the rate-making and administrative provisions, on the one hand, and other provisions, on the other. Section 8, subds. (e), (f), and (g), contained the rate-making provisions. Section 15, subd. (d), authorized appeals to the district court and provided:

"No appeal as aforesaid shall stay or supersede the order appealed from *in so far as such order shall relate to rates of transportation* or to modes of transacting the business of the appellant with the order, and the return made on said appeal, and after giving the respondent notice and opportunity to be heard, shall so direct."

public, unless the court hearing or deciding such case shall so direct." (Italics supplied.)

Seizing upon the italicized portion of the statute as authorizing an appeal from a rate order, carriers appealed from such orders in M. & St. L. Ry. Co. v. Railroad and Warehouse Comm. 44 Minn. 336, 46 N. W. 559, and in Railway Transfer Co. v. Railroad and Warehouse Comm. 39 Minn. 231, 39 N. W. 150, *supra.* In these cases we definitely construed the statute, as it then was, as not authorizing an appeal to the district court from a rate order and that the right of appeal was limited to other cases. In the first cited case we so held, notwithstanding the fact that the point was not raised in the district court, upon the theory that the question was a jurisdictional one and that jurisdiction could not be conferred by consent.

Following the decision of the Supreme Court of the United States in 1890 in C. M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418, 10 S. Ct. 462, 702, 33 L. ed. 970 (reversing our decision in State ex rel. Railroad and Warehouse Comm. v. C. M. & St. P. Ry. Co. 38 Minn. 281, 37 N. W. 782), holding that the rate-making provisions of c. 10 were unconstitutional insofar as they did not accord to carriers a right to be heard in the determination of the reasonableness of rates to be charged upon the ground that the failure to accord such a hearing constituted a denial of due process, c. 10 was radically amended in 1891 by L. 1891, c. 106, so as not only to bring our statute in harmony with the rules laid down by the Supreme Court of the United States, but so as to make other changes also. Section 1 of c. 106 in effect repealed L. 1887, c. 10, § 8, subds. (e), (f), and (g), (the rate-making provisions), and enacted a new section, called § 1(e), which among other things provided for rate hearings and contained provisions:

"* * * If the *tariff* of rates * * * shall be found by the evidence to be unequal or unreasonable, the commission shall state wherein they are unequal or unreasonable, *and shall make a tariff of rates, fares, charges and classifications which shall be substituted for the tariff complained of.*

"Such *tariff* * * * shall be deemed and taken in all courts of this state as *prima facie* evidence that the tariff of rates, fares, charges or classifications so made is equal and reasonable, *and such tariff so made shall be in full force and effect during the pendency of any appeal that may be taken in the matter to the courts.*" (Italics supplied.)

At the same time, c. 10, § 15, subd. (d), (the appeal provisions), were in effect repealed and a new provision adopted, called § 3, which authorized an appeal by "any railroad company or common carrier affected by any order of the commission," except certain administrative orders therein referred to. This section contained a further provision, as follows:

"*No appeal as aforesaid shall stay or supersede the order appealed from unless the court hearing and deciding such case, upon application and notice to the other party, shall so direct.*" (Italics supplied.)

What the legislature did was to give to carriers for the first time a right of hearing in the rate-making process and a right of appeal from rate orders, but simultaneously therewith it provided that there should be no stay of a rate order on appeal by enacting the clause that "such tariff [of rates] so made shall be in full force and effect during the pendency of any appeal that may be taken in the matter to the courts." In short, it simply said that there should be a right of appeal, but no stay. The legislature adopted a specific rule denying the right to a stay on appeals from rate orders, and a general one for other appeals in which it allowed stays. As said in Aslakson v. State Dept. of Highways, 217 Minn. 524, 527, 15 N. W. (2d) 22, 24, quoting from 50 Am. Jur., Statutes, § 367, "the general provision must be taken to affect only such cases within its general language as are not within the provisions of the particular provision." Lest it be claimed that the provisions of the 1887 statute, seized upon by the railroads as authorizing an appeal in M. & St. L. Ry. Co. v. Railroad and Warehouse Comm. 44 Minn. 336, 46 N. W. 559, and Railway Transfer Co. v. Railroad

and Warehouse Comm. 39 Minn. 231, 39 N. W. 150, authorized a stay also, the legislature clarified the matter by repealing those provisions. It took a fresh start, so to speak, by providing for appeals without stays.

The provisions of L. 1891, c. 106, to the effect that a rate order shall be in force and effect during the pendency of any appeal and that stays may be granted on appeals involving other than rate orders (*i. e.*, an order to maintain and operate a Sunday train such as was involved in State v. G. N. Ry. Co. 130 Minn. 57, 153 N. W. 247, Ann. Cas. 1917B, 1201, cited by the majority) have been carried forward in the statutes with no substantial change. Section 1(e) is now § 216.19 (§ 4644); § 3 is now § 216.25 (§ 4651).

There have been some amendments to the statute, but they have effected no changes in the respects with which we are now concerned. Section 3, relating to appeals, was amended by L. 1895, c. 107, which added some provisions and reënacted the provisions relative to stays on appeals. In R. L. 1905, § 1(e), was reënacted as § 1969, and § 3, as amended by L. 1895, c. 107, as §§ 1971 and 1972. While there is some slight change in the language in the revision, the changes were made without intention to change the meaning. Report of Revision Comm. 1905 (comments on c. 28), 2 Mason St. 1927, p. 2149.

Meanwhile, L. 1897, c. 67, authorizing the commission to initiate rate proceedings on its own motion, was enacted. This was carried into R. L. 1905 as § 1970. In 1907, the provisions relating to appeals were again amended. L. 1907, c. 167, § 2. The amendment is now part of § 216.25 (§ 4651). The sentence relative to stays on appeals was reënacted as part of the amendment. New provisions were added, which in part read:

"* * * If such appeal is not taken, such order shall become final, and it shall thereupon be the duty of the carriers affected to adopt and publish the rates or classifications therein prescribed. And all orders heretofore made, from which no appeal was taken, as provided by law, shall be deemed to have been in full effect for all purposes from the time when the right to appeal from such

order expired. When no appeal is taken from an order, as herein provided, the parties affected by such order shall be deemed to have waived the right to have the merits of such controversy reviewed by a court, and there shall be no trial of the merits of re-examination of the facts of any controversy in which such order was made, by any district court to which application may be made for a writ to enforce the same."

The first sentence of the quoted portion is said by the majority to make it clear that it was intended thereby that the district court should have the power to grant stays on appeals from rate orders. This, it will be shown later, is untenable.

Finally, in 1911, two new sections were added, which do not change the meaning of those already referred to, but do unmistakably show that their meaning is just as I have stated it. Chapter 50 was added, authorizing the attorney general to institute rate proceedings and adopting *in toto* the procedural provisions of R. L. 1905, § 1969 (§ 216.19 [§ 4644]), including the one that a tariff of rates thereunder shall be in force during the pendency of any appeal therefrom. This statute is now § 216.20 (§ 4645). At the same legislative session, c. 87 was also enacted, enlarging the powers of the commission under R. L. 1905, § 1970, to initiate rate proceedings on its own motion. It provides: "The *rates* established under proceedings instituted under this section shall be in force during the pendency of any appeal or other proceeding to review the action of the commission." (Italics supplied.) Here, we have two legislative declarations subsequent to the last amendment of the appeal provisions to the effect that tariffs and rates established under the statute shall remain in force pending any appeal; that there shall be no stay of rate orders on appeal.

While the majority disavows the propriety of resorting to construction, it has done that very thing to bolster what I deem to be an untenable conclusion. The majority says that the sentence from L. 1907, c. 167, § 2, now a part of § 216.25 (§ 4651), quoted above, to the effect that if an appeal from an order is not taken it shall become final and thereupon it shall be the duty of the car-

riers affected to adopt and publish the rates therein prescribed, indicates a legislative intent that the district court shall have the right to grant a stay. I can see no connection between this part of the statute and the power to grant a stay. On its face, the sentence in question does not refer to stays at all. On the contrary, it and the other portions quoted above refer to orders that have not in any manner come before the courts by appeal or otherwise. The plain purpose of the language in question is to make rate orders immune from attack except upon appeal. It has nothing to do with stays at all.

Furthermore, the part of c. 167 relating to stays on appeals is a reënactment of these provisions in the prior statutes. Where provisions of a statute are carried forward into an amendatory statute, they are deemed to have been reënacted with the meaning they originally had. The other provisions of the amendatory act are simply so much new legislation. State ex rel. Maryland Cas. Co. v. District Court, 134 Minn. 131, 158 N. W. 798; 59 C. J., Statutes, § 647, at p. 1097. Hence, since the provision in question did not authorize a stay under the former statute, it did not do so under the amendatory one. And, because the new parts of the amendatory statutes do not relate to stays at all, there is no basis for holding that the legislature intended to provide for any.

Nor does § 217.30 (§ 4659), authorizing the granting of a stay on appeal from the district court to the supreme court, disclose any legislative intention that the district court should have such power on appeals from the commission. Statutes may, and commonly do, provide for stays on appeals from the judgment or orders of *particular* courts; and, where a stay is authorized on appeal from one court, it does not authorize one on appeal from another court. Dutcher v. Culver, 23 Minn. 415, holding that since the statute did not provide for a stay on appeal from the probate court to the district court none could be granted under other statutory provisions. See, 4 C. J. S., Appeal and Error, § 632(b).

Furthermore, the mere fact that § 217.30 (§ 4659) was enacted is convincing proof that there were to be no stays of rate orders on

appeal. Ordinarily, the right of appeal carries with it by implication as a traditional incidental power for doing complete justice the right also to grant stays pending an appeal. Scripps-Howard Radio, Inc. v. Federal Communications Comm. 316 U. S. 4, 62 S. Ct. 875, 86 L. ed. 1229, and other cases on this point *infra*. So, absent other tokens of legislative intent, the right of appeal from the district to the supreme court included a right to a stay. At the same time the legislature provided that there should be no stay on appeal from the commission to the district court it also provided that there should be no stay on appeal from the district to the supreme court. L. 1891, c. 106, § 4. In order to make it clear that on appeals to this court there should be a right to a stay, the legislature did not content itself with repealing § 4. In that situation, the provisions of § 1, that the tariff of rates fixed should be in full force and effect "during the pendency of *any appeal* that may be taken in the matter to the courts" (italics supplied), would prevent granting any stay. The words "any appeal" include appeals from the district to the supreme court as well as those from the commission to the district court. And, upon the supposition that the provision mentioned precluded all stays of rate orders, it was necessary to make express provision for stays on appeals to this court if there were to be any, which was done by L. 1897, c. 288, now § 217.30 (§ 4659). It is clear that the legislature intended the provisions of c. 106 to preclude any stays, and for that reason specific statutory authorization was necessary for stays on appeal to this court.

The way in which the legislature dealt with appeals to this court is indicative of what it intended when it provided in effect that there should be no stay of a rate order on appeal to the district court. In the first place, the granting of a stay on appeal to this court is discretionary with the court. Provision is made to protect shippers by a provision that no stay shall be effective "unless the carrier appealing from a judgment or order fixing rates for transportation of persons or property shall give bond in a sum and with sureties approved by a judge of the court ordering the stay,

conditioned that the appellant will refund to the person entitled thereto any amount received for such transportation above the amount finally fixed by the court." The need for a bond on appeal from the commission to the district court is as great as it is on appeal from the district court to this court. Since the legislature considered the matter in connection with appeals to this court by a specific provision covering the matter, its omission to make similar provision on appeal from the commission to the district court can be explained only by assuming that the legislature intended that on such appeals there should be no stay and hence no need for a bond. It cannot be believed that it would have intended to provide for stays without at the same time providing for a bond as necessary for the protection of shippers and passengers as it did on appeals to this court. The recent history of railroad receiverships and bankruptcies and the hardship, inconvenience, and losses to patrons of the carriers incident to the assertion of claims in such proceedings emphasize the need of such protection and almost certainly indicate that the legislature did not overlook the matter. Six of the eight carriers involved in these proceedings have been in bankruptcy or receivership at one time or another. Some have been so involved more than once. Trustees in bankruptcy appear for two of them in this case. In view of the close attention which the legislature and the commission have given to the public interest in such matters, it is inconceivable that any sort of stay would ever be granted, except upon security to protect the public. The presence of a requirement for a bond as the condition of a stay on appeals to this court and the absence of any such requirement on appeals to the district court betoken a legislative intention that, because, as has been pointed out, there is no right to a stay of a rate order on appeals from the commission to the district court, there is no need for a bond either.

It has also been suggested by the majority that denial of the power to grant a stay raises a doubt as to the constitutionality of the statute insofar as it so provides. This suggestion is clearly without merit. A statute providing that a reviewing court shall

not stay an administrative body's order during the pendency of an appeal to review the order is constitutional. Yakus v. United States, 321 U. S. 414, 64 S. Ct. 660, 88 L. ed. 834; Scripps-Howard Radio, Inc. v. Federal Communications Comm. 316 U. S. 4, 62 S. Ct. 875, 86 L. ed. 1229; Henderson v. Kimmel (D. C.) 47 F. Supp. 635. We have held many times that the right of appeal is a purely statutory, and not a constitutional, one. State ex rel. Nelson-Spelliscy Imp. Co. v. District Court, 128 Minn. 221, 150 N. W. 623; J. T. McMillan Co. v. State Board of Health, 110 Minn. 145, 124 N. W. 828; State and R. R. & W. H. Comm. v. Rock Island M. T. Co. 209 Minn. 105, 295 N. W. 519; State v. Tri-State T. & T. Co. 146 Minn. 247, 178 N. W. 603; 1 Dunnell, Dig. & Supp. § 283. Likewise, because the right of appeal is not a constitutional one, the right to a stay is not a constitutional one either, even in purely judicial proceedings, as where suit is commenced in one court and removed to another by reviewing process. Bryant v. People, 71 Ill. 32; Bannister v. Shepherd, 191 S. C. 165, 4 S. E. (2d) 7; 4 C. J. S., Appeal and Error, § 629. Where a statute does not accord to a public utility a right of direct review from a rate order and of a stay of enforcement of the order pending the review and it is shown that the order is a confiscatory one, the federal courts have held that they have jurisdiction in suits for injunctions to decide the constitutional questions involved notwithstanding the state law that there shall be no right of appeal or stay. Pacific Tel. & Tel. Co. v. Kuykendall, 265 U. S. 196, 44 S. Ct. 553, 68 L. ed. 975; Porter v. Investors Syndicate, 286 U. S. 461, 52 S. Ct. 617, 76 L. ed. 1226; and Mountain States Power Co. v. Public Service Comm. 299 U. S. 167, 57 S. Ct. 168, 81 L. ed. 99, are such cases. Some state courts have taken the view that a state court is without jurisdiction under such statutes. State ex rel. Ohio Bell Tel. Co. v. Court of Common Pleas, 128 Ohio St. 553, 192 N. E. 787; City of Cleveland v. Public Utilities Comm. 126 Ohio St. 91, 183 N. E. 924. The question whether we should adopt one view or the other is not before us. But no case holds that, because a federal court will take jurisdiction in an independent action to protect constitutional rights, there is

either a right to an appeal or to a stay. On the contrary, jurisdiction is taken in such cases because of the fact that there is no right either of appeal or of stay.

It seems to me that the history of the rate making, the appeal, and the stay provisions of the statutes shows that in the beginning carriers were not entitled to be heard in the rate-making process; that there was then no right of appeal and of stay; that thereafter, when it became necessary for constitutional reasons to accord the carriers a right to be heard in connection with rate making, they were also given a right of appeal to review rate orders, but at the same time it was also expressly provided that there should be no right to any stay with a repeal of the language in the old statute susceptible of such a meaning; and that, after the pattern was thus set, it has been continuously maintained in all legislation, including the last legislative expression in the matter in 1911, as the settled legislative policy of the state.

■ Assuming, for the purposes of discussion only and without in any way conceding the point, that the district court has the power to grant a stay of a rate order on appeal from the commission, there was, in my judgment, a clear abuse of the power here in granting the stay.

Before proceeding to consider the question, I want to make it clear that the so-called bond required by the trial judge was without any legal effect, because the statute does not authorize the taking of such a bond, as has just been pointed out; because the bond only binds the carriers to discharge an obligation otherwise imposed by law to refund any overcharges; and because the bond affords no security whatsoever for such payment. See, Williams v. Hart, 17 Ala. 102; Chambers v. Wilson, 67 S. D. 125, 289 N. W. 588; Universal Automobile Ins. Co. v. Culberson (Tex. Civ. App.) 51 S. W. (2d) 1071.

A statute providing for appeals from an administrative agency to a court and for stays of administrative orders pending appeals to determine their validity does not establish the same relation between the court and the agency (here the district court and the

commission) as between an appellate and an inferior court, and, in the very nature of things, no such relationship can be constitutionally established. The commission exercises legislative power when it makes a rate order. Courts exercise judicial power only. An attempt to delegate rate-making powers to the courts, either in the first instance or by way of review, would be an unconstitutional delegation of legislative power to the judiciary. Because of this division of governmental power, courts accept, as they are bound to do, the orders of the commission as "judgments of a tribunal appointed by law and informed by experience." State v. G. N. Ry. Co. 135 Minn. 19, 22, 159 N. W. 1089, 1090. As said in State v. Tri-State T. & T. Co. 204 Minn. 516, 284 N. W. 294, 298:

"The powers of the reviewing court are purely judicial and lack legislative attributes. Its function is to protect constitutional rights, not to sit as a board of revision with appellate legislative authority to substitute its own judgment for that of the commission."

To like effect see, In re Lake Elysian High-Water Level, 208 Minn. 158, 293 N. W. 140. In M. & St. L. Ry. Co. v. Railroad and Warehouse Comm. 44 Minn. 336, 339, 46 N. W. 559, 560, *supra,* Mr. Justice Mitchell tersely said: "* * * it is not to be presumed that the legislature intended to turn the courts into appellate railroad commissions."

While the proceeding by which a case is transferred from the commission to the courts is called an "appeal," the review, because of constitutional limitations upon the court's power, is limited to questions of a judicial nature, such as whether the commission acted within the scope of its statutory power, whether there is evidence reasonably sustaining the facts found by it as a basis for its action, and whether its action is violative of the constitution. These questions could be reviewed otherwise in an independent action, as, for example, in one for an injunction. Any determination of other questions would involve the exercise of nonjudicial power. In Federal Communications Comm. v. Pottsville Broad-

casting Co. 309 U. S. 134, 144, 60 S. Ct. 437, 442, 84 L. ed. 656, 662, the court said:

"* * * But to assimilate the relation of these administrative bodies and the courts to the relationship between lower and upper courts is to disregard the origin and purposes of the movement for administrative regulation and at the same time to disregard the traditional scope, however far-reaching, of the judicial process. Unless these vital differentiations between the functions of judicial and administrative tribunals are observed, courts will stray outside their province and read the laws of Congress through the distorting lenses of inapplicable legal doctrine."

Hence, on appeals from administrative bodies courts do not have the same function to perform with respect to administrative orders as they do with respect to judgments and orders of inferior courts. The right to interfere judicially with administrative orders, either by interlocutory injunction or a stay, where one is permitted, is limited to such instances as justify a court in interfering with any legislative act. Courts have no discretion to stay the effect of legislative action, except upon the grounds mentioned. Unless grounds for such interference are established, a rate order must remain in effect pending the proceeding in which it is being reviewed. Public Service Comm. v. Wisconsin Telephone Co. 289 U. S. 67, 53 S. Ct. 514, 77 L. ed. 1036; International Ry. Co. v. Prendergast (D. C.) 52 F. (2d) 293; Cambridge Electric Light Co. v. Atwill (D. C.) 25 F. (2d) 485.

It is to be remembered that rate orders should be put into effect at the earliest possible moment and that to the extent enforcement of such an order is stayed or delayed the rate-making process is thwarted. 3 Pond, Public Utilities, § 931. See, Louisville and Nashville R. Co. v. Behlmer, 169 U. S. 644, 18 S. Ct. 502, 42 L. ed. 889. Therefore, a stay should be granted, if at all, only for cause, and then upon due proof of the grounds alleged. In the instant case, the only ground alleged is that the rates fixed by the order are confiscatory.

The provisions of § 216.25 (§ 4651), that the stay there authorized shall be granted only after giving the respondent notice and an opportunity to be heard, contemplate a judicial examination and determination of the issues raised on an application for a stay, and presuppose a formal proceeding with adversary parties and with issues on which evidence may be adduced and with respect to which the parties are entitled to be fully heard. In re Securities and Exchange Comm. (2 Cir.) 84 F. (2d) 316; State ex rel. Hughes v. Milhollan, 50 N. D. 184, 195 N. W. 292; Amerada Petroleum Corp. v. Hester, 188 Okl. 394, 109 P. (2d) 820; Independent L. Ins. Co. v. Rodgers, 165 Tenn. 447, 55 S. W. (2d) 767; Wisconsin Telephone Co. v. Public Service Comm. 232 Wis. 274, 287 N. W. 122, 593. The statute provides for hearing with all the elements of due process as defined in Juster Bros. Inc. v. Christgau, 214 Minn. 108, 7 N. W. (2d) 501. The duty of a judge to *examine* an order, account, or report involves something more than merely taking a look at it or reading it. The probate code uses the expression frequently. A judge's duty to *examine* an order, account, or report involves a hearing and determination of the rights of the parties with respect to any matter involved therein. Citation of authority to sustain so elementary a proposition should not be necessary. The trial judge was required to determine as part of this examination whether on the showing there was any basis for granting a stay. The proceedings here, if they do not do so intentionally, in effect recognize the validity of the rules mentioned. The carriers seek a stay upon a ground, to wit, that the rates fixed are confiscatory. Since only the one ground for judicial interference mentioned is asserted, the others are out of the case. The question then is whether the evidence adduced at the hearing shows that the rates in question are confiscatory as claimed.

The evidence in support of the order consisted of the order itself, which under the statute is *prima facie evidence* that the rates fixed are reasonable. The order recites that the rates prescribed are based on the cost of rendering the services involved and that the evidence of the carriers consisted of hypothetical figures which did

not reflect the true fact situation or the cost of the services. The rates in all instances were comparable to those lawfully fixed by the interstate commerce commission. The disparity between those rates and the charges in some instances amounted to such sums as $1.02 a ton or $51 per car and $26.32 for a service the reasonable rate for which should be not to exceed $4.

The showing for the stay consisted only of an affidavit of R. B. Leng, in which he states among other things that he is familiar with all the proceedings and the evidence; that, if the rate order were enforced and later found to be invalid, the carriers would have to bring a multiplicity of suits to recover "overcharges"—evidently he means the undercharges; that a bond would protect shippers; and that he and all the carriers "believe the order of the Commission to be unlawful, unreasonable and confiscatory." He also states that all the statements contained in the motion are true, and these, so far as here material, are that the rates fixed are lower than those formerly existing and that the rates fixed "are and will be in the future unreasonable, non-compensatory, and will be confiscatory."

The statements in Leng's affidavit and in the motion are mere conclusions, as distinguished from statements of fact. The statements in his affidavit that he and the carriers "believe" that the order was "unlawful, unreasonable and confiscatory" are mere conclusions and no evidence of those facts. Amory v. Amory, 26 Wis. 152. The allegations that the order was unlawful, unreasonable, and confiscatory are mere conclusions. This precise question was decided in the leading case of Public Service Comm. v. Wisconsin Telephone Co. 289 U. S. 67, 53 S. Ct. 514, 77 L. ed. 1036. There, the question was whether a statutory three-judge federal court's findings that the rates prescribed by the commission "would result in the confiscation of the property" of complainant, would deprive it of its property "without compensation and without due process of law," and would cause "irreparable injury if an interlocutory injunction were not issued" were findings of "fact." Mr. Chief Justice Hughes, speaking for the court, said, in holding the alleged

findings to be mere conclusions of law and not findings of fact (289 U. S. 69, 53 S. Ct. 515, 77 L. ed. 1037):

"* * * Not only did the court fail to set forth the facts pertinent to a conclusion that an interlocutory injunction should issue, but the court declared that the prescribed rates were confiscatory without any findings warranting such a conclusion."

Here, the carriers made no showing of facts showing confiscation; they simply alleged a conclusion of law that such was the fact without any proof to substantiate it, and the trial judge adopted the conclusions of law thus stated as a statement of facts justifying the granting of a stay. The majority here attempt to distinguish the Wisconsin Telephone Company case on the untenable ground that it was decided under 28 USCA, §§ 381, 382, 383, and Equity Rule 70½ (28 USCA, § 723, Appendix), which it claims in effect require findings of evidentiary facts. The plain fact is, as the opinion shows, that Equity Rule 70½ had no application and that the case was decided without regard to it. The opinion states (289 U. S. 70, 53 S. Ct. 515, 77 L. ed. 1038):

"It is true, as the appellee contends, that the terms of Equity Rule 70½, relating to decisions of suits in equity, apply to decisions upon final hearing and do not embrace decisions upon interlocutory applications. But the duty of the court in dealing with interlocutory applications, to which this Court had previously directed attention, was not altered by the adoption of that rule."

Likewise, the statutes in question do not require any particular kind of proof of the facts constituting confiscation, and the decision was not made upon the supposition that they did. The opinion does not refer to any of these sections. No reason is apparent why it should have done so. Section 381 applies only to *temporary restraining orders* "granted without notice to the opposite party" and requires in such cases a showing of "specific facts" that irreparable injury, loss, or damage will result to the applicant "before notice can be served and a hearing had thereon." That section specifies what facts shall be found, but not the evidence by which

the facts shall be established. The cited case did not arise under this section, as the opinion clearly shows. Section 382 relates to security required upon issuance of a "restraining order or interlocutory order of injunction." Section 383 relates to the provisions of injunction orders and restraining orders and requires that the reasons for the issuance of the same be set forth and that the acts restrained be specifically described. Of course, these do not relate to the question of the proofs required, and the court evidently was of that opinion. If not, it would have cited the statutes and shown their applicability to the case before it.

These views were reiterated in Illinois Commerce Comm. v. Thomson, 318 U. S. 675, 685, 63 S. Ct. 834, 839, 87 L. ed. 1075, 1082, where judgment for an injunction was entered upon a finding of confiscation based upon an allegation in the bill that the rates in question were confiscatory with no proof otherwise of that fact. The defendant had not answered. Judgment was entered for complainant upon defendant's motion to strike the complaint, and upon the prayer of the bill for a permanent injunction. The court held that a statement that rates are "confiscatory" is a mere conclusion; and hence that an allegation that rates are "confiscatory" will not support a finding of that fact, even under the rule that the allegations of the complaint will be taken as true where there is no answer.

Cases arising under the New York statute (47 McKinney's Cons. L. of N. Y. c. 48, Public Service Law, Art. 1, § 23[2]), providing that a stay order shall be granted only upon "a specific finding based upon evidence * * * that great and irreparable damage would otherwise result to the petitioner and specifying the nature of the damage," hold that the evidence must be of a *factual* nature and not mere conclusions. Matter of Long• Island Lighting Co. v. Maltbie, 160 Misc. 165, 289 N. Y. S. 1092; Matter of New Rochelle Water Co. v. Maltbie, 158 Misc. 752, 288 N. Y. S. 82; Matter of Upstate Telephone Corp. v. Maltbie, 154 Misc. 512, 278 N. Y. S. 283; Matter of New York Edison Co. v. Maltbie, 150 Misc. 200, 270 N. Y. S. 409. As will be shown, a *factual,* or, more accurately

speaking, an evidentiary, showing is required in all cases to justify any sort of temporary injunction or stay.

By a showing of facts as distinguished from conclusions is meant such an explicit statement of evidentiary facts as would be proper in the oral testimony of a witness. Pierse v. Smith, 1 Minn. 60 (82). In the leading case of Olmstead v. Koester, 14 Kan. 463, Mr. Justice Brewer, as a member of the Kansas court, pointed out the distinction between the statement of facts required in a pleading and those required in an affidavit to justify the issuance of a temporary injunction, and laid down the rule that where evidence is produced by affidavit for the purpose of obtaining interlocutory relief the statement must be one of evidentiary facts and not mere conclusions. It is for the court and not for the affiant to draw conclusions and inferences from facts stated. Hinds v. Fagebank, 9 Minn. 57 (68). The cases generally are in accord with these views. See, 43 C. J. S., Injunctions, § 194, p. 900. Because the showing of the carriers here consisted of mere conclusions, there was no evidence of any sort before the trial judge warranting a stay or any other relief. Hinds v. Fagebank, 9 Minn. 57 (68); Pierse v. Smith, 1 Minn. 60 (82).

What discretion did the trial judge have in the premises? The majority says that he had a right to exercise a "personal judgment." I think that such a view involves a fundamental error. In my judgment, the thing characteristic of judicial discretion is that it lacks any element of *personal* action on the part of the judge. When a judge exercises judicial discretion, he decides a particular case by applying the law to the facts before him. Jaques v. Chandler, 73 N. H. 376, 62 A. 713. While the term implies the absence of a hard and fast rule, it excludes all thought that a judge may exercise a purely personal judgment or caprice, or decide arbitrarily or wilfully. As said in State ex rel. Ruesswig v. McDonald, 101 Minn. 349, 353, 112 N. W. 278, 279: "Judicial discretion, properly understood, requires a court in exercising it to give force and effect, not to the will of the judge, but to the law." This is the view of great judges such as Coke, Mansfield, and Marshall, who molded our law.

27 C. J. S., Discretion, pp. 135 to 138. Under a government, which is one of law and not of men, there is no room for personal rule even by judges. Mr. Chief Justice Marshall, in Osborn v. Bank of the United States, 9 Wheat. (U. S.) 738, 866, 6 L. ed. 204, 234, gave historic expression of the true rule when he said:

"* * * Judicial power, as contradistinguished from the power of the laws, has no existence. Courts are the mere instruments of the law, and can will nothing. When they are said to exercise a discretion, it is a mere legal discretion, a discretion to be exercised in discerning the course prescribed by law; and, when that is discerned, it is the duty of the Court to follow it. Judicial power is never exercised for the purpose of giving effect to the will of the Judge; always for the purpose of giving effect to the will of the Legislature; or, in other words, to the will of the law."

Guided by such a conception of a judge's duty, justice is dispensed according to the rights of the parties and not as judicial favor. As the court well said in Walters v. McElroy, 151 Pa. 549, 557, 25 A. 125, 127:

"* * * Certainly no chancellor in any English speaking country will at this day admit that he dispenses favors or refuses rightful demands, or deny that when a suitor has brought his cause clearly within the rules of equity jurisprudence, the relief he asks is demandable *ex debito justitiae,* and needs not to be implored *ex gratia.*"

The adoption of the judge's individual sense of justice as a criterion for deciding cases would result, as Mr. Justice Cardozo says in his *"The Nature of the Judicial Process,"* p. 138, in "juridical anarchy" at worst and "judicial impressionism" at best. Further, he says (pp. 140-141) that a judge must decide according to applicable rule and that he is never free to decide as he might please. The text says:

"* * * The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant, roam-

ing at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to 'the primordial necessity of order in the social life.'"

It follows that where a judge must be satisfied as to the existence of facts as the basis for the exercise of judicial discretion, it is meant that he shall be *judicially* and not merely *personally* satisfied. Pierse v. Smith, 1 Minn. 60 (82); Mott v. Lawrence, 17 Howard's Practice (N. Y.) 559, 9 Abbotts' Practice (N. Y.) 196, citing Chief Justice Savage in Smith v. Luce, 14 Wend. (N. Y.) 237.

In a case involving an application to enjoin or to stay a rate order, the exercise of judicial discretion is no different from that exercised in other cases. Public Service Comm. v. Wisconsin Telephone Co. 289 U. S. 67, 53 S. Ct. 514, 77 L. ed. 1036; Matter of Long Island Lighting Co. v. Maltbie, 160 Misc. 165, 289 N. Y. S. 1092; Matter of New Rochelle Water Co. v. Maltbie, 158 Misc. 752, 288 N. Y. S. 82; Matter of Upstate Telephone Corp. v. Maltbie, 154 Misc. 512, 278 N. Y. S. 283; Matter of New York Edison Co. v. Maltbie, 150 Misc. 200, 270 N. Y. S. 409. As said by Mr. Chief Justice Hughes in the Wisconsin Telephone Company case (289 U. S. 70, 53 S. Ct. 515, 77 L. ed. 1038):

"* * * While an application for an interlocutory injunction does not involve a final determination of the merits, it does involve the exercise of a sound judicial discretion. That discretion can be exercised only upon a determination, in the light of the issues and of the facts presented, whether the complainant has made, or has failed to make, such a showing of the gravity of his complaint as to warrant interlocutory relief. Thus, if the issue is confiscation, the complainant must make a factual showing of the probable confiscatory effect of the statute or order with such clarity and persuasiveness as to demonstrate the propriety in the interest of jus-

tice, and in order to prevent irreparable injury, of restraining the State's action until hearing upon the merits can be had."

There are limitations implicit in judicial discretion springing from its very nature. There is no room for discretion where there are no facts to decide, as, for example, in the instant case, where all the evidence is one way—it all being in favor of the commission's order—or where the judge's duty is otherwise clear. Potter v. Holmes, 74 Minn. 508, 77 N. W. 416; Fagebank v. Fagebank, 9 Minn. 61 (72); Curtis v. Moore, 3 Minn. 7 (29); Pierse v. Smith, 1 Minn. 60 (82). We have just had occasion so to hold in Williams v. Williams, 221 Minn. 441, 22 N. W. (2d) 212. In rate proceedings, where there is no factual showing justifying relief, and it is to be remembered that for the purpose of the rule a showing consisting of conclusions is not a factual showing at all, the court has no right to grant any relief. Illinois Commerce Comm. v. Thomson, 318 U. S. 675, 63 S. Ct. 834, 87 L. ed. 1075; Public Service Comm. v. Wisconsin Telephone Co. 289 U. S. 67, 53 S. Ct. 514, 77 L. ed. 1036; Matter of Long Island Lighting Co. v. Maltbie, 160 Misc. 165, 289 N. Y. S. 1092.

It is true that there are some expressions in the books contrary to the views which I have expressed above. The rather astounding statement of the rule that judicial discretion involves the exercise of a judge's "personal judgment," taken from 2 Dunnell, Dig. p. 650, is not based upon any court decision, but upon a dictionary definition. Dunnell clearly ignores our own cases such as State ex rel. Ruesswig v. McDonald, 101 Minn. 349, 112 N. W. 278, and Potter v. Holmes, 74 Minn. 508, 77 N. W. 416, *supra*. The language quoted from LaPlante v. Knutson, 174 Minn. 344, 346, 219 N. W. 184, 185, that in exercising judicial discretion a judge is "unhampered" by "arbitrary rules" in "fitting his action to the merits of each case as it arises," requires clarification. What is meant by such expressions as "arbitrary rules" and "fitting his action to the merits of each case"? The word "arbitrary" is used to denote action depending on whim and caprice. The expression "arbitrary rules" would seem to denote rules fixed or established through an exercise of will or

by caprice without consideration of, or adjustment with reference to, controlling principles, facts, circumstances, or reason. The quotation from the LaPlante case that a judge is unhampered by arbitrary rules simply means that he is free from any hard and fast rule in exercising judicial discretion. While that is a mere truism, it is quite a different thing from saying that he is altogether unhampered in exercising judicial discretion and that he may do as he pleases regardless of applicable rules of law and the facts of the case. When it is said that a judge "fits" his action to the "merits" of a case, the word "fits" is used in the sense of adapting and the word "merits" as referring to the substance of the case on both the law and the facts; hence the entire expression means that a judge applies the applicable rules of law to the facts of the particular case. But to say that a judge is unhampered in the sense that he is unrestrained by either applicable rules of law or the facts of the particular case, as the majority does, involves a meaning not warranted by the quotation from the LaPlante case. To say that a judge is free when he fits his action to the merits of the case involves the contradiction of saying that he is free from restraint; but that in fact he is not, because he is restrained both by the applicable rules of law and by the particular facts. It implies a hedge in favor of the true rule, that a judge must always decide according to the law and facts, by saying that he is free but only when he so decides. Our decisions both prior to and after the LaPlante case adhere to what I conceive to be the true rule and are collected in 1 Dunnell, Dig. & Supp. § 399. The LaPlante case was decided correctly. If there is anything in the language in question that might be construed as meaning that a judge has an unrestrained discretion or that he is free to decide according to his own notions regardless of law and fact, then I think the language should be clarified in accordance with these views. The same justice who wrote the opinion in the LaPlante case wrote for the court in Meehan v. Mitchell Battery Co. 191 Minn. 411, 254 N. W. 584, holding that, where the judge's duty is clear as a matter of law, he has no discretion to decide otherwise. There are some

cases, such as Delno v. Market St. Ry. Co. (9 Cir.) 124 F. (2d) 965, and Home Owners' Loan Corp. v. Huffman (8 Cir.) 134 F. (2d) 314, which adopt dictionary definitions similar to the one from Dunnell. Both of these cases, like our LaPlante case, hedge on the question of the judge's being absolutely free to do as he pleases. And how could a court having regard for the true nature of a judge's duty do otherwise? In the Home Owners' Loan case the court said (134 F. [2d] 316): "The judicial discretion of the trial court * * * ·does not extend to a refusal to apply well-settled principles of law to a conceded or undisputable state of facts." So understood, the definition is not altogether innocuous, but it at least recognizes the inescapable fact that a judge is bound to decide according to law and not according to his own notions. Even in that view, decision is compelled here that the trial judge abused his discretion for reasons to be presently stated.

In order to be entitled to a temporary injunction or stay, the plaintiff must make out at least a *prima facie* showing of a right to final relief. Where he fails to make such a showing, as the carriers here have, he is not entitled to any relief, much less to relief on the ground of avoidance of multiplicity of suits. Davis v. Forrestal, 124 Minn. 10, 144 N. W. 423, L. R. A. 1915F, 1012, Ann. Cas. 1915B, 448; 43 C. J. S., Injunctions, § 19, p. 433. Where a party does not show that he could prevail in one action, it is not to be supposed that he will bring many of them.

This is a case where the trial judge had no discretion in the premises. The only legal evidence before the court was the order itself. Under the statute (§ 216.25 [§ 4651]), the order was *prima facie* reasonable. The only showing to the contrary consisted of the conclusions of Mr. Leng. These, as has been pointed out, were not evidence of the facts to which they related. The trial judge had no evidence before him justifying a holding that the order was in any respect illegal or unreasonable. There were no facts for him to decide. There was no discretion for him to exercise. The clear intent of the statute is that an order shall be sustained where it is shown not to be unreasonable. Western Buse Tel. Co. v. North-

western Bell Tel. Co. 188 Minn. 524, 248 N. W. 220. Consequently, it was the plain duty of the trial judge not to stay enforcement of the rate order.

It is only because of the importance to the public of the questions here involved that I have stated my views at such length.

MR. JUSTICE CHRISTIANSON took no part in the consideration or decision of this case.

[1]Reported in 22 N. W. (2d) 544.