STATE of Minnesota, Appellant,

v.

M.D.T., Respondent.

No. A11–1285.

Court of Appeals of Minnesota.

April 9, 2012.

Lori Swanson, Attorney General, St. Paul, MN; and Kimberly S. Pehrson, Assistant Nobles County Attorney, Worthington, MN, for appellant.

Daniel A. Birkholz, Birkholz Law LLC, St. James, MN, for respondent.

Considered and decided by KLAPHAKE, Presiding Judge; STONEBURNER, Judge; and CLEARY, Judge.

## OPINION

KLAPHAKE, Judge.

Five years after entering an *Alford* plea to a felony charge of aggravated forgery for altering the dosage of a prescription cold medicine, respondent petitioned the district court for expungement of her criminal records. The district court granted the petition as to both respondent's criminal records generated and maintained by the judicial branch and those generated by the judicial branch and maintained by the executive branch. Appellant challenges that decision.

## FACTS

On February 7, 2006, respondent M.D.T. was arrested after she submitted to a Worthington Shopko pharmacy an altered prescription for the cold medicine Robitussin, which contains codeine, a controlled substance. After her arrest, M.D.T. gave a statement to police in which she admitted to altering the prescription dosage from 200 milliliters to 400 milliliters. She stated that she made the alteration because she did not have enough money for another prescription and could not afford to return to the doctor if the prescription did not work. Respondent's criminal record included no other offenses.

The state charged respondent with two counts of felony-level aggravated forgery,

Minn.Stat. § 609.625, subds. 1(1) (making or altering), 3 (2006) (uttering or possessing), and one count of felony-level controlled substance crime (procurement by fraud) in violation of Minn.Stat. § 152.025, subd. 2(a)(2)(i) (2006). Respondent entered an *Alford* plea on one of the aggravated forgery counts (uttering or possessing).

At sentencing, the district court stayed imposition of sentence, placed respondent on three years' probation, and ordered her to pay an $879 fine, among other conditions. On February 5, 2008, respondent was discharged early from probation and her remaining fine was forgiven.

Thereafter, respondent petitioned pro se for expungement of her criminal records on two occasions. In the first pro se petition, filed on September 2, 2008, respondent asked for expungement to permit her to "move on with my life" and "start my career . . . in business management and accounting," and she claimed that she was rehabilitated because she followed all court orders and had a "good steady job." The district court denied respondent's petition after finding that she had failed to provide clear and convincing evidence either that she had rehabilitated herself in such a short period or that expungement would yield a benefit to her that was commensurate with the public detriment of elimination of her record and the burden of issuing and administering the expungement order.

In the second and most recent expungement petition filed on January 1, 2011, respondent was represented by legal counsel and submitted a lengthy account of the steps she took to rehabilitate herself, documenting her job history, history of job dismissals and job application rejections due to her criminal history, career plans, personal history, education, and her lack of any additional new offenses. With regard to her education, respondent presented evidence of academic achievement in the form of her college transcript and her placement on the deans' lists at a community college. The petition also included a letter of support from a woman who employed her as a personal care assistant for the employer's special needs child. The Nobles County Attorney objected to the petition on the basis that the stated reason for the expungement, attainment of employment goals, is not a valid reason for expungement, that expungement is not essential to the judiciary's core functions, and that the district court lacked the authority to order expungement of records outside the judicial branch.

During the April 12, 2011 hearing on the petition, the district court received into evidence a February 2, 2011 letter from Jon Ramlo, the director of Rock Nobles Community Corrections. The letter states that "Rock Nobles Community Corrections would not be opposed to the expungement of this case."

The district court granted respondent's motion to expunge the record of her offense. The court concluded that "there is clear and convincing evidence that sealing the record would yield a benefit to [respondent] commensurate with the disadvantages to the public and public safety." The court noted that "precedence in the area of expungement law regarding the district court's inherent authority to expunge executive branch records is unclear," but it found compelling the reasoning and commentary contained in several recent unpublished opinions by this court that "utilize a more expansive view of the Court's inherent judicial authority to craft a remedy in expungement cases." In summarizing its reasoning, the court stated:

> It is this Court's opinion that [respondent's] one-time mistake of altering a minor cold medicine prescription in light

of [respondent's] successful completion of probation and subsequent reduced offense level, combined with her otherwise clean criminal history and strong showing of her rehabilitative efforts does not justify the [Bureau of Criminal Apprehension] to hinder [respondent's] employment progress for 15 years ... The District Court has the inherent judicial authority to seal executive branch records and creates a meaningful remedy in cases such as this one.

The court ordered that

[a]ll official records held by the following agencies, other than the non-public record retained by the Bureau of Criminal Apprehension, including all records relating to arrest, indictment or complaint, trial, dismissal and discharge shall be sealed and their existence shall be disclosed only by court order, except as authorized by law: Nobles District Court, Nobles County Sheriff, Bureau of Criminal Apprehension, Minnesota Attorney General's Office, Minnesota Department of Corrections, Nobles County Attorney, Worthington City Police Dept., Probation/Court Services Department, Worthington City Attorney.

## ISSUES

1. Did the district court abuse its discretion by ordering expungement of respondent's judicial branch criminal records?

2. Did the district court exceed its authority by ordering expungement of judicial branch records maintained by the executive branch?

## ANALYSIS

### I.

■■■ In an exercise of its discretion, a district court may expunge a person's criminal records by statute, under Minn. Stat. § 609A.02, subd. 3 (2010), when the criminal charges were resolved favorably to the person, or for equitable reasons, based on the court's inherent authority. *State v. S.L.H.*, 755 N.W.2d 271, 274 (Minn.2008). The expungement here is based on inherent authority only. This court reviews expungement decisions under the abuse of discretion standard. *State v. Ambaye*, 616 N.W.2d 256, 261 (Minn.2000). In expungement matters, the district court must make factual findings to support its exercise of discretion, and its findings will not be reversed unless clearly erroneous. *H.A.*, 716 N.W.2d at 363.

■■■ Appellant first challenges the district court's exercise of its inherent authority to order expungement of judicial records related to respondent's conviction. The district court's inherent authority to order expungement is limited to situations in which there is a serious infringement of the petitioner's constitutional rights caused by the accessibility of the criminal records, or when the court determines that "expungement will yield a benefit to the petitioner commensurate with the disadvantages to the public from the elimination of the record and the burden on the court in issuing, enforcing and monitoring an expungement order." *Ambaye*, 616 N.W.2d at 258 (quotation omitted). This court has adopted a five-factor analysis to assist the district court in conducting the benefit/burden analysis, which includes consideration of

(a) the extent that a petitioner has demonstrated difficulties in securing employment or housing as a result of the records sought to be expunged; (b) the seriousness and nature of the offense; (c) the potential risk that the petitioner poses and how this affects the public's right to access the records; (d) any additional offenses or rehabilitative efforts

since the offense, and (e) other objective evidence of hardship under the circumstances.

*H.A.*, 716 N.W.2d at 364.

The district court applied each of the *H.A.* factors in reaching its decision.

*Employment Difficulties*

■ In respondent's sworn statement attached to her expungement petition, she details her job history, including that she was "fired from H.S.I. after the background check showed [her] felony charges from 2006," she was "turned down at numerous jobs that required background checks," and she eventually accepted a job as a grocery store cashier because "it didn't require a background check." Respondent listed the employers by whom she was denied employment after required background checks, including HyVee, Polaris, Rosenbloom, Spirit Lake Hospital, Windom Hospital, and Jackson County School District. She also stated that she "lost a job at Lakefield Middle School on the Maintenance crew after a background check" and that she "took four classes to become a coach, but was told not to apply for [her] license, because of [her] criminal background."

We agree with the district court that respondent has sufficiently demonstrated difficulties in securing employment. She was fired from jobs, was turned down from jobs, and was told not to pursue jobs because of her criminal background. Appellant appears to suggest that "difficulties" in securing employment should be interpreted to mean "impossibility" in securing employment, but that is not a reasonable interpretation of the word "difficulty."

■ Appellant also challenges the sufficiency of evidence provided by respondent, claiming that it is "self-serving" and "unsubstantiated." Under Minn.Stat. § 609A.03, subd. 2 (2010), a petition to expunge criminal records "shall be signed under oath by the petitioner." At the hearing on the petition, any victim may "submit an oral or written statement to the court." Minn.Stat. § 609A.03, subd. 4 (2010). The petitioner must prove that expungement is warranted "upon clear and convincing evidence." Minn.Stat. § 609A.03, subd. 5 (2010). Respondent met the requirements for sufficiency of evidence in this case. *See State v. N.G.K.*, 770 N.W.2d 177, 180–81 (Minn.App.2009) (rejecting claim that expungement petitioner had submitted insufficient evidence of attempts at securing employment, even though petitioner relied only on his own testimony, was not cross-examined, and evidence supporting the claim was "somewhat vague"); *see also H.A.*, 716 N.W.2d at 364 (stating that "a history of unsuccessful employment attempts" is sufficient to prove "difficulties in securing employment"). While documentary evidence from potential or former employers might have been more persuasive, respondent's sworn and uncontradicted statement showing her history of dismissals and employment rejections is sufficient. This factor therefore favors affirmance of the expungement order.

*Seriousness of Offense*

■ The district court found that appellant's offense, aggravated forgery, was a "non-violent misdemeanor" and that "the facts surrounding the offense" also showed that "the nature and seriousness" of the offense were "minimal." We agree. As compared to the range of other possible criminal offenses, respondent's offense was not serious. Although appellant stresses that respondent was charged with a felony offense, that offense was reduced by operation of law to a misdemeanor, involved no violence or victims, and the circumstances surrounding the offense suggest that it

was not serious. This factor also favors affirmance of the expungement order.

*Impact of Risk Posed by Respondent on Public Right to Access Records*

 .We conclude that the balancing test underlying this factor favors respondent. We agree with the district court's assessment that respondent "is not a violent or dangerous individual, and does not pose a significant threat to the public." Noting that while the facts of the case fit into the definition of aggravated forgery, the district court stated that "the underlying situation of changing a cold prescription for a non-methamphetamine based drug is significantly less" culpable than is suggested by the offense title of "aggravated forgery," which is passed on to employers. The court also noted that the Minnesota Government Data Practices Act, Minn. Stat. §§ 13.80–.90 (2010), requires retention of information available to the public regarding criminal defendants, but found that the public interest was satisfied because of respondent's low risk of reoffending.

Appellant's claims that respondent could still pose an unknown risk do not find support in the facts presented. Respondent's conduct was more consistent with an isolated lapse in judgment motivated by financial hardship than an indication of future behavior. Respondent admitted to the offense in her first interaction with police, has fully satisfied the terms of her sentence in every respect, and has had no criminal offenses since her 2006 offense. After being convicted, she has attempted to retain employment, has remained in a stable marriage, and has given birth to a child. This conduct, as well as the type of offense, suggests that respondent poses little risk to the public. This factor also favors expungement.

*Additional Offenses and Rehabilitative Efforts*

Appellant concedes that this factor favors expungement, as respondent has committed no additional offenses and has satisfied all mandated or suggested rehabilitation.

*Other Objective Evidence of Hardship under the Circumstances*

 In examining this factor, the district court noted that respondent has suffered numerous miscarriages, has been married for over eight years, and "desires to support her family with her education and future employment and is unduly hampered by her criminal record." Appellant claims that any hardship must be due to the criminal conviction, and not due to irrelevant life circumstances. While respondent's miscarriages do not show a hardship related to the criminal conviction, she has demonstrated hardship by showing the need to provide financial support to her family and her inability to do so because of the conviction.

 Because all of the *H.A.* factors support the district court's expungement decision, we conclude that the district court did not abuse its discretion by ordering expungement of respondent's criminal records that were generated in the judicial system.

## II.

 "Whether a court has inherent authority to issue an expungement order affecting the executive branch is a question of law, which is subject to a de novo standard of review." *N.G.K.,* 770 N.W.2d at 181. "The judiciary possesses inherent authority to expunge criminal records when expungement is necessary to prevent serious infringement of constitutional rights." *S.L.H.,* 755 N.W.2d at 274 (quotation omitted). "The judiciary's inherent authority

grows out of express and implied constitutional provisions mandating a separation of powers and a viable judicial branch of government." *Id.* at 275 (quotation omitted). The district court's authority to expunge executive branch records is limited to cases in which "the relief ... [is] necessary to the performance of the judicial function as contemplated in our state constitution.... Accordingly, the judiciary's inherent authority governs that which is essential to the existence, dignity, and function of a court because it is a court." *Id.* (quotations and citations omitted). As to these "core judicial functions," courts should proceed "cautiously when invoking inherent authority." *Id.* at 278 (quotation omitted).

In *S.L.H.*, the supreme court affirmed the district court's decision not to exercise inherent authority to expunge a petitioner's criminal records held by the executive branch, because the claimed basis for expungement, inability to obtain employment, was not a core judicial function that would entitle her to relief.[1] *Id.* at 280. A concurrence signed by three justices and written by Justice Paul Anderson joined in the majority's result but expressed concern that the opinion "could in the future be construed more narrowly than it ought to be based on the wording of the majority opinion," and urged that "our inherent authority to grant relief may extend to officials and institutions outside the judicial branch in appropriate circumstances." *Id.* at 282 (quotation omitted).

Since *S.L.H.*, this court has addressed the issue of expungement of criminal records held by the executive branch on at least ten occasions, twice in published opinions. In *State v. M.L.A.*, 785 N.W.2d 763, 764–65 (Minn.App.2010), this court held that the district court could not order the Department of Human Services to seal criminal records of a nursing assistant/phlebotomist who had been convicted of fifth-degree controlled substance possession eight years earlier and who alleged inability to pursue employment. In a strongly worded opinion, this court directed the district court to follow *S.L.H.*, rather than an opinion issued by this court before *S.L.H.*, *State v. V.A.J.*, 744 N.W.2d 674 (Minn.App.2008), *review denied* (Minn. Oct. 1, 2008). *Id.* at 767. In *V.A.J.*, this court held that "[a] district court's inherent authority to expunge criminal records includes judicially created records disseminated to an executive agency that maintains custodianship over those records, including judicially created records maintained by the Bureau of Criminal Apprehension." *Id.* at 675. In *M.L.A.*, we said that in granting a petitioner's request for expungement of criminal records held by the executive branch, the district court had "recognized but disregarded ... that the holding of *V.A.J.* is no longer valid," that the conflicting holdings of the two cases, which involve "nearly identical facts," could not be reconciled, and that "*S.L.H.* supercedes *V.A.J.*" *Id.* at 767; *see N.G.K.*, 770 N.W.2d at 182 ("*V.A.J.* does not survive *S.L.H.*").

In the first opinion published by this court after *S.L.H.*, *N.G.K.*, 770 N.W.2d at 184, we also reversed the portion of a district court order that mandated sealing criminal records held by the executive branch. There, the petitioner had pleaded guilty to gross misdemeanor theft, and eleven years after the conviction he sought

---

1. At age 20, S.L.H. pleaded guilty to fifth-degree felony possession of a controlled substance, and upon her discharge of sentence after successful completion of probation, her offense was deemed a misdemeanor consistent with Minn.Stat. § 609.13, subd. 1(2) (2006). *Id.* at 273. S.L.H., a single mother of four children who was solely responsible for their support, petitioned for expungement 14 years later. *Id.*

expungement because he "was being excluded from employment opportunities" and was concerned about obtaining financing for a home purchase. *Id.* at 179. As in *M.L.A.*, we concluded that "[t]he expungement of records of N.G.K.'s conviction that are possessed by executive branch offices is not essential to the existence, dignity, and function of a court because it is a court." *Id.* at 183 (quotation omitted).

Upon reflection, in both *M.L.A.* and *N.G.K.*, we interpreted *S.L.H.* quite restrictively, based upon the supreme court's language, without reference to the posture and the holding of the case. In *S.L.H.*, the supreme court *affirmed* a district court's decision not to exercise its discretion to expunge criminal records created by the judicial branch but maintained by the executive branch. *S.L.H.*, 755 N.W.2d at 280. However, in *M.L.A.* and *N.G.K.*, we narrowly construed *S.L.H.* to suggest that a district court could *never* order expungement of criminal records held by the executive branch absent constitutional issues. That suggestion may have been too restrictive. *See State v. N. Pac. Ry.*, 221 Minn. 400, 408–09, 22 N.W.2d 569, 574 (1946) ("Judicial discretion is that part of the judicial power which depends, not upon the application of rules of law or the determination of questions of strict right, but upon personal judgment to be exercised in view of the circumstances of each case. It is a fundamental rule of appellate procedure that the determination of a trial court of a matter resting in its discretion will not be reversed on appeal except for a clear abuse of discretion.").

While the caselaw emanating from this court since *S.L.H.* has attempted to follow the analysis set forth therein, the district courts of this state, who observe the problem of the expungement petitioner in a far more immediate setting than do the appellate courts, have demonstrated repeatedly their reluctance to follow the narrow but bright-line rule of *S.L.H.*, as we have suggested. Some of those courts chafe at the law but apply it, and others, including the judge in this case, recognize that the current state of the law eviscerates the authority of courts to issue meaningful orders and permits a serious infringement of an individual's fundamental rights in the name of a separation of powers concern that permits, on behalf of the *executive* branch's right to retain records created by the *judicial* branch, nullification of district court orders. Notably, two concurrences and a majority opinion in three recent unpublished opinions from this court have urged a less restrictive reading of the law, included impassioned statements about the unfairness of the law, and suggested other ways to lessen its harsh effect. *See, e.g., State v. A.S.J.*, No. A09–1511, 2010 WL 773617, at *4 (Minn.App. Mar. 9, 2010) (Shumaker, J., concurring) ("[R]ehabilitation is the grandest goal of the criminal justice system. It is more than slightly cynical for the law to permit an expungement upon a showing of rehabilitation but then to allow the public record to appear to contradict that showing." And "[T]he legislature should broaden the reach of the court's inherent authority to expunge executive branch records."); *State v. M.E.M.*, No. A09–850, 2010 WL 772441, at *4 (Minn.App. Mar. 9, 2010) (Stauber, J., concurring) ("The judiciary is bestowed with both statutory and inherent equitable authority to expunge criminal records, but without the ability to expunge executive branch records that were created only by virtue of our judicial records, expungement becomes an illusory remedy."); *State v. A.J.H.*, No. A09–274, 2009 WL 3735988, at *2 (Minn.App. Nov. 10, 2009) (unanimous opinion) (urging a "deeper consideration of the potential harm to the integrity of the executive branch . . . to determine whether

expungement will offend the separation of powers doctrine," including consideration of "whether an executive agency has expressed a need to maintain judicially created records; whether other records, such as arrest records, will satisfy the executive agency's needs; whether an executive agency's needs can be satisfied by sealing, rather than expunging, executive branch records . . .; and whether the executive agency has its own expungement method").

A review of the history of Minnesota expungement law reveals that the legal principles have remained the same over time: there is an enduring tension between the judiciary and executive branch under the separation of powers doctrine, and this is mirrored by a tension between the separation of powers doctrine and the constitutional rights of the petitioner. In the last decade we have observed a prominent increase in the retention and dissemination of criminal records by the executive branch that has had a profound effect in this area of law. The executive branch now keeps public records of arrests, charges, and convictions. *See* Minn.Stat. § 13.82, subd. 2 (2010) (providing that "data created or collected by law enforcement agencies which document[ ] any actions taken by them to cite, arrest, incarcerate or otherwise substantially deprive an adult individual of liberty shall be public at all times in the originating agency"). In addition, under Minn.Stat. § 13.87, subd. 1(b) (2010), the Bureau of Criminal Apprehension (B.C.A.) must maintain records of convictions, including the offense for which an individual was convicted, for 15 years following discharge of the individual's sentence.

> [T]he following non-judicial agencies, departments or officials may hold an individual's record: police department; sheriff department; city attorney; county attorney; Minnesota Attorney General; . . . probation department; county diversion program; the Minnesota Bureau of Criminal Apprehension; the FBI; the Minnesota Department of Human Services; the Minnesota Department of Health; and the Minnesota Department of Corrections.

Lindsay W. Davis, *An Amicus Perspective on Recent Minnesota Criminal Expungement,* (Davis article) 2 Wm. Mitchell J.L. & Prac. 4, at 2 (2009); *see S.L.H.,* 755 N.W.2d at 279 (summarizing criminal history data maintained by executive branch, as required by law).

Further, criminal records maintained by the executive branch are now easily accessed by the public. As noted in the Davis article, while formerly an individual who wished to obtain criminal records information was required either to pay a fee to the B.C.A. or travel to the district court to obtain such information, both entities now post that information online at no cost. *Id.* at 1. In addition, criminal background checks are required and used for many purposes, including employment, housing, and lending, among others. *See, e.g.,* Minn.Stat. § 245C.03 (2010) (listing individuals subject to background checks by the commissioner of human services). As an example of the pervasive use of criminal records, private employer use of criminal background checks increased 50%, to 80% overall, from 1996 to 2004. Davis article at 1. Criminal background checks are required for employees in the fields of health care, teaching, child care, law, and other areas requiring state licensing, and are routinely used in the housing screening process.

This blossoming in the area of criminal records preservation and dissemination by the executive branch has greatly impacted both the inherent authority of the judiciary and the individual rights of

the expungement petitioner. As to the effect on the judiciary, the separation of powers doctrine "is grounded in judicial self-preservation" and "can be neither augmented nor diminished by legislative acts." *S.L.H.*, 755 N.W.2d at 278 (quotation omitted); *State v. Osterloh*, 275 N.W.2d 578, 580 (Minn.1978) ("Inherent judicial power grows out of express and implied constitutional provisions mandating a separation of powers and a viable judicial branch of government. It comprehends all authority necessary to preserve and improve the fundamental judicial function of deciding cases.") (quotation omitted); *State v. T.M.B.*, 590 N.W.2d 809, 811 (Minn.App. 1999) ("The source of the judiciary's inherent authority is the separation of powers doctrine and the concomitant need for judicial self-preservation."), *review denied* (Minn. June 16, 1999). "By means of its inherent authority, the judiciary is able to protect against legislative and executive actions that could unreasonably curtail its powers, impair its efficiency, or otherwise preclude it from accomplishing the purpose for which it was created." *Id.* The supreme court recently recognized that a court's inherent judicial power "comprehends all authority necessary to preserve and improve the fundamental judicial function of deciding cases." *State v. Randolph*, 800 N.W.2d 150, 160 (Minn.2011) (quoting *In re Clerk of Lyon Cty. Courts' Comp.*, 308 Minn. 172, 180, 241 N.W.2d 781, 786 (1976)).

 A court's inherent authority is limited. "The fundamental functions of a court are the administration of justice and the protection of the rights guaranteed by the constitution." *In re Petition for Integration of Bar of Minnesota*, 216 Minn. 195, 199, 12 N.W.2d 515, 518 (1943). In matters of punishment, the judiciary is charged with "the responsibility of ensuring that the punishment is not inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate or not warranted by the findings of fact issued by the district court." *Taylor v. State*, 670 N.W.2d 584, 589 (Minn.2003) (quoting Minn.Stat. § 244.11, subd. 2(b)). By permitting the executive branch to maintain and disseminate criminal records that the judiciary has both created and expunged, the authority of the judiciary to perform its judicial function is curtailed. By restricting a district court to an expungement order that is limited to criminal records maintained by the judiciary, when the executive branch maintains and broadly disseminates those same records, the judiciary has, in effect, ceded its role of offering a true remedy to those entitled to it or determining fair punishment of offenders. *See S.L.H.*, 755 N.W.2d at 277 (recognizing that a core judicial function is to "reduc[e] or eliminate[e] unfairness to individuals that could arise if court records, records related to the court process, or records used by agents in that process were used in a way that undermine[s] the benefit to the petitioner of having his conviction set aside") (quotation omitted).

In our view, if the effects of a minor forgery offense linger for a lifetime, prohibiting meaningful employment, the punishment for that crime is "excessive" and eviscerates that person's fundamental rights. *See* James W. Diehm, *Federal Expungement: A Concept in Need of a Definition*, 66 St. Johns L.R.J. 73, 80 (1992) (noting that expungement is often afforded to "defendants [who] were young at the time of the offense and have since led an exemplary life"). If society has an interest in criminal rehabilitation or even a broader economic interest in encouraging, or at least, not precluding, a person convicted of a minor crime from eventually obtaining employment, those interests are not furthered by the existing law. An individual's fundamental rights to obtain employment

and housing are affected by a criminal record, as is an individual's right to be free from excessive punishment.

Ultimately, we observe a continuing need to balance the interests and powers of the judiciary and executive branches of government in expungement matters. Here, the executive branch record-keeping function exists by virtue of a judicial determination of guilt. Because of the derivative nature of the executive branch function, when a determination of guilt is extinguished by the judiciary, the need for executive branch recordkeeping is reduced. In this case, one arm of the executive branch acknowledged as much when the Rock Nobles County Corrections conceded that it did not object "to the expungement of this case." And the district court order here fashioned a pragmatic solution to address both the individual rights of the expungement petitioner and the record-keeping function of the executive branch: the sealing of executive branch records, which under proper circumstances and for good cause shown could be reopened. This solution protects the fundamental rights of the expungement petitioner, the district court's inherent authority to issue meaningful orders that are effectual, the executive branch's

duty to maintain criminal records in the public interest, and the separation of powers.

 Given that the district court considered these issues and weighed them in deciding whether to expunge respondent's criminal records maintained by the executive branch, we cannot say that the district court abused its discretion. We therefore affirm the district court's order that expunges respondent's criminal records generated and held by the judicial branch and the sealing of records maintained by the executive branch.

### DECISION

The district court did not abuse its discretion by ordering expungement of respondent's criminal records generated by the judicial branch or sealing those records generated by the judicial branch and maintained by the executive branch.

**Affirmed.**